## ALEXANDER *v.* THE STATE.

1. The business of buying and selling what are commonly known as futures, being gambling, is not protected by the interstate commerce clause of the constitution of the United States.    Therefore the resident agent of persons in New York, who took orders in this State for cotton futures to be executed in New York, and who failed to register his name and place of business and pay the license tax as required by the general tax act for 1889 and 1890 was liable to the punishment prescribed by that act.

2. It is not contemplated by the statute that, in order for it to apply, the contract for buying or selling futures shall be completed by the individual or the agent who is engaged in the business.

November 26, 1890.

Criminal law. Charge of court. Taxation. License. Constitutional law. Interstate commerce. Contracts. Futures. Principal and agent. Before Judge Eve. City court of Richmond county. May term, 1890.

Reported in the decision.

Leonard Phinizy, for plaintiff in error.

C. H. Cohen, solicitor, contra.

Simmons, Justice.

The general tax act for 1889 and 1890, in the 18th paragraph of section 2 (Acts 1888, p. 22), levies a license tax as follows :

"Upon every individual or firm, or his or their agents, engaged in the business of selling or buying farm products, sugar, coffee and salt and meat for future delivery (commonly called 'futures'), five hundred dollars each per annum for the county where such business is carried on: provided, that this tax shall not be demanded of any cotton warehouseman, dealer in cotton or any provision broker, who takes orders in the regular course of their trade only for the actual and bona fide delivery of cotton and other produce so ordered, and where, by the terms of the contract, it is not left to the option of the party so ordering, or the party taking such order, to avoid the delivery of the produce or products by paying the difference in the market price of such produce or products at the time of delivery : provided, further, that such cotton warehouseman, dealer in actual cotton or any provision broker does not carry on the business of buying futures in connection with his or their other business."

Section 4 of the act provides, in substance, that before any person taxed as above provided for shall be authorized to carry on said business, " they shall go before the ordinary of the county in which they propose to do business, and register their names, place of business, and at the same time pay their taxes to the tax-collector. . . Any person failing to register with the ordinary as herein required, shall be liable to indictment for a misdemeanor, and on conviction shall be

fined not less than fifty dollars nor more than two hundred dollars, at the discretion of the court trying the same, or be imprisoned as prescribed by section 4310 of the code."

It appears from the record in this case that Alexander, the plaintiff in error, failed to go before the ordinary and register his name and place of business, and to pay the license tax to the tax-collector. He was indicted, tried and convicted under this act. He moved for a new trial upon the several grounds set out in his motion, which was denied by the trial judge, and he excepted.

The plaintiff in error contends that the court erred in refusing to give the following in charge to the jury: "The act of December 26th, 1889, was not intended to apply to parties non-resident soliciting orders in this State and executing said orders out of this State for future delivery of cotton. To make it apply to such parties would be to make it violate art. 1, section 8, par. 3 of the constitution of the United States, and I so charge you." And he further complains that the court erred in substituting in lieu thereof this language: "I give you in charge this part of the third request with this qualification, viz. provided the contracts were such as could not be avoided by payment of the actual price or the difference in price at any time."

To treat this exception technically, there are two reasons why the judge should not have given this request in charge: (1) Because there was no act of December 26th, 1889, on the subject, the act applicable being the act of December 26th, 1888; and (2) it does not appear that Alexander, the defendant in the court below, was a non-resident of the State of Georgia soliciting orders in this State, but it does appear that he was a resident of the county of Richmond in this State, where he was indicted. It would seem to be the

theory of the plaintiff in error that Hubbard, Price & Co., for whom the defendant appeared to have been agent, were on trial, and not the agent himself. Waiving, however, these technical objections, and coming to the question made before us in the argument, to wit, whether the act, if to be applied to Alexander, the defendant, was in violation of the constitution of the United States because it interfered with interstate commerce, we do not think it was error to refuse the request. We do not think the business of buying and selling what are commonly known as "futures" is protected under the interstate commerce clause of the constitution of the United States. This court and many other courts in this country have held that this business is gambling. *Cunningham* v. *National Bank of Augusta*, 71 *Ga.* 400 ; *National Bank of Augusta* v. *Cunningham*, 75 *Ga.* 366 ; *Walters* v. *Comer & Co.*, 79 *Ga.* 796 ; Embrey v. Jemison, 131 U. S. 336 ; Irwin *v.* Williar, 110 U. S. 499 ; 8 Am. & Eng. Enc. of L., p. 1005, and cases cited.

If, therefore, the business of buying and selling futures is gambling, it is not protected by the interstate commerce clause of the constitution of the United States. As was well said by the solicitor-general in the argument of this case, that clause protects interstate commerce, but does not protect interstate gambling. For a discussion of a case somewhat analogous to this, see Fortenbury *v.* State, 47 Ark. 188.

The next complaint is made in the 5th and last ground of the motion, which is that the court erred in charging as follows: "If you find from the evidence that Alexander was the local agent of Hubbard, Price & Co. for the sale or purchase of future cotton, and that he took orders (only) here, and that he received margins here, and sent them to New York, and that all losses were paid in New York through him, and all statements and profits were sent out from New York here to him,

and all settlements were made in New York, but through him here, and that a party could settle his contracts at any time he chose in New York through the agent here (Alexander), and that he had not paid the tax, then I charge you that this would amount to Hubbard, Price & Co. doing a future business here in this State, and the defendant would be guilty, and you should so find."

In our opinion, this charge was substantially correct. The statute requires registration and the payment of the tax by every individual or firm, or agent, "engaged in the business of selling or buying" futures, and does not, in our opinion, contemplate that the selling or buying must be complete in order for the statute to apply. If one engages or holds himself out as engaged in this business, he must register and pay the tax; and to engage in the business it is not necessary that he shall complete the sale or purchase. The same act levies a special tax upon every practitioner of law, of medicine or of dentistry, upon every president of a bank, upon each agent or firm negotiating loans, and upon those engaged in various other occupations. A lawyer or physician who holds himself out as engaged in his particular line of business could not avoid the tax because of his failure to secure a client or patient; and we think it is equally clear that one who holds himself out as an agent for the selling and buying of futures cannot claim exemption because he does not complete the purchase or sale of any future contract. It is not necessary under this act for one man to complete the contract; it may take two or more to carry on the business. If one is connected with others who are engaged in the business and his part is to lead to or aid in the selling or buying, he is "engaged in the business of selling or buying" within the meaning of the act, just as much as if he completed the contracts himself. If this defendant was the agent in this State of a New

York firm engaged in the selling and buying of futures, and his part of the business was to secure orders for future contracts to be placed in New York, and to collect from the customer the money paid for " margins," and if the customer made a profit pay him his profit upon the closing out of the contract, he was " engaged in the business of selling or buying " futures in this State, and the statute applied to him just as it would if he had completed the whole transaction in this State. The evidence shows that the defendant's part of the business was to solicit customers in this State, and when he obtained one, to receive the customer's money and telegraph his offer to New York, and if the offer should be accepted, to forward the money; and if the customer won in the game carried on in the cotton exchange of New York, the defendant was to pay him the profit, and if the customer lost, he collected the loss. . Under this state of facts, we think the court correctly charged the law, and that the verdict of the jury was authorized by the evidence.          *Judgment affirmed.*