# GATEWOOD v. NORTH CAROLINA.

## ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 105. Argued November 16, 1906.—Decided December 24, 1906.

In determining the constitutionality of a state statute this court must follow the construction given thereto by the highest court of the State; and a ruling by that court that the provisions of a statute prohibiting the purchasing of a commodity on margin, and the carrying on of "bucket

[1] For abstracts of arguments see *ante*, pp. 520 *et seq.*

shops" for dealing in such commodity are separable is conclusive on
this court, and refutes the contention of one convicted of carrying on
a "bucket shop" that the law is void as to him because certain pre-
sumptions created by the statute in regard to the prohibitions of pur-
chasing on margins may be repugnant to the Fourteenth Amendment;
nor will this court determine that the creation of certain presumptions
of guilt by a state statute is repugnant to the due process clause of the
Fourteenth Amendment when the record does not show that the con-
viction sought to be reviewed was based on these presumptions and could
not have been based on independent evidence.

138 N. Car. 149, affirmed.

THE facts are stated in the opinion.

*Mr. Robert W. Winston*, with whom *Mr. Victor S. Bryant*
was on the brief, for plaintiff in error:

The question presented is whether the act of 1905 of North
Carolina is valid or invalid.  Plaintiff in error contends that
§ 7 vitiates the entire act, it being inconsistent with the Con-
stitution of the United States because it declares that the act
shall not be construed so as to apply to any person, firm, cor-
poration or his or their agent engaged in the business of manu-
facturing or wholesale merchandising in the purchase or sale
of the necessary commodities required in the ordinary course
of their business.  Also that the presumptions created in the
act are within the prohibition against the deprivation of prop-
erty without due process of law.  *Connolly* v. *Union Pipe Co.*,
184 U. S. 540.

The act evidently means that a wholesale merchant or manu-
facturer or his agent, when engaged in purchasing or selling
commodities required in the ordinary course of his business,
is not liable to the provisions of such legislation.  That is the
conduct of a wholesale merchant, or his agent, buying or sell-
ing on margin, is not criminal or presumptively so, while an-
other, in the like circumstances, is presumably guilty of a
crime.  The North Carolina Court declares that there may
be good reasons for this discrimination, and whether good and
sound or the contrary, that courts have no veto power upon
such exercise of the police power.  *State* v. *Barrett*, 50 S. E.

Rep. 506. The police power of the State does not extend so far as this. The *Barrett case, supra,* cited as authority for this position, fails to sustain it.

Section 7 is in the nature of a proviso to each of the other sections; and such connection is established by its phraseology. It qualifies section 1 and renders lawful for the excepted classes to do any of the prohibited acts as well as to buy and sell on margin.

The other sections of the act are concerned with the establishment of proof alone, and the creating of certain artificial and arbitrary presumptions from certain predicaments of fact, but § 7 is also to be appended to each as a proviso. Hence, notwithstanding the admission of any of the facts specified in these sections of the act by the manufacturer, or wholesale merchant, no presumption of guilt arises and he is relieved from the burdensome and disgraceful presumption of crime which is cast upon all the other people under like circumstances. This conclusion cannot be avoided, because of the language of the law itself.

As to the unconstitutionality of the act by reason of the exemptions provided for therein, see *Union Co. Nat. Bank* v. *Ozan Lumber Co.,* 127 Fed. Rep. 211; *Brown* v. *Jacobs Pharmacy Co.,* 115 Georgia, 453; *State* v. *Mitchell,* 79 Maine, 66; *Matthews* v. *People,* 202 Illinois, 389; *Standard Oil Co.* v. *Spartanburg,* 66 S. Car. 37; *Kellyville Coal Co.* v. *Harrier,* 207 Illinois, 624; *Greenwich Ins. Co.* v. *Carroll,* 125 Fed. Rep. 129; *Ballard* v. *Mississippi Cotton Oil Co.,* 81 Mississippi, 507; *In re Pell,* 181 N. Y. 48; *People* v. *Orange Co. Road Co.,* 175 N. Y. 84; *Texas* v. *Shippers' Compress &c. Co.,* 93 Texas, 603.

It is plain that the act of 1889 was a dead letter until the act of 1905 vitalized it by making certain innocent things presumptive evidence of guilt. By express legislative enactment, the act of 1905 is incorporated into the act of 1889, so that a retail merchant, under § 1 of the act of 1889, cannot recover if he sue upon a contract where he has put up a margin, but a wholesale merchant can recover under like conditions.

If only § 7 of the act of 1905 is a discrimination in favor of the manufacturer and wholesale dealer, in so far as it relates to § 5 of the act, then the whole act is just as effectually void as if the Supreme Court of the State had held all of said sections to be discriminative.

The act of 1905 is unusual in its artificial presumptions and in the manner in which it is engrafted upon the act of 1889 and it is not in harmony with the letter or spirit of the Constitution. The following cases are illustrative of the point at issue. *Munn* v. *Illinois*, 94 U. S. 113; *Lawton* v. *Steele*, 152 U. S. 133; *Colon* v. *Lisk*, 153 N. Y. 188.

Presumptions of guilt attempted to be raised by acts of legislatures are void. *People* v. *Lyon*, 27 Hun, 180; *State* v. *Beswick*, 13 R. I. 218; *State* v. *Beach*, 43 N. E. Rep. 951; *Cummings* v. *Missouri*, 4 Wall. 328; *Wynehamer* v. *People*, 13 N. Y. 446; *San Mateo* v. *Railroad Co.*, 13 Fed. Rep. 722.

*Mr. Walter Clark, Jr.*, by special leave of the court, with whom *Mr. Robert D. Gilmer*, Attorney General of the State of North Carolina, was on the brief, for defendant in error:

The State contends that § 7 of the act of 1905 does not in any way conflict with any provision of the Constitution of the United States or of the Fourteenth Amendment thereto. If it had read "this act shall not be construed so as to apply to any person, firm, corporation, or his or their agent, engaged in the business of manufacturing or wholesale merchandising," this might have been class legislation, exempting certain persons, and therefore unconstitutional. But this is not the whole of the section. It contains also "in the purchase or sale of the necessary commodities required in the ordinary course of their business." This gives these classes no right not given to everyone else. This section was added out of superabundant caution. It simply gives these classes the right to buy or sell for actual future delivery. The act does not prevent anyone from buying for actual future delivery, but makes it criminal for any person, firm, etc., to buy on margin for future delivery

when no actual delivery is intended. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, distinguished.

Under the construction put upon this act by the Supreme Court of North Carolina there is no Federal question presented, as by this construction the act is clearly constitutional. *State* v. *McGinnis*, 138 N. Car. 724; *State* v. *Clayton*, 138 N. Car. 732, followed in the present case in a *per curiam* order. ·

MR. JUSTICE WHITE delivered the opinion of the court.

North Carolina in 1889 enacted "An act to suppress and prevent certain kinds of vicious contracts." Laws N. Car., 1889, ch. 221. This law was thus summarized by the Supreme Court of that State in *State* v. *McGinnis*, 138 N. Car. 724:

"Section one made void all contracts for the sale of articles therein named for future delivery, wherein (notwithstanding any terms used) it is not intended that the articles agreed to be sold and delivered shall be actually delivered, but only the difference between the contract price and the market value at the time stipulated shall be paid. Section two enacted that when the defense provided by that act is set up in a verified answer, the burden shall be upon the plaintiff to prove a lawful contract, but the answer shall not be used against the defendant on an indictment for the transaction. Section three made the parties to such contract, and agents concerned therein, indictable, and section four made persons while in this State, consenting to become parties to such contract, made in another State, and all agents in this State, aiding and furthering such contract, made in another State, indictable."

In 1905 there was adopted "An act . · . . to prevent the dealing in futures." This law contains seven sections. The first and second made it "unlawful for any person, corporation or other association of persons, either as principal or agents, to establish or open an office or other place of business . . . for the purpose of carrying on or engaging in any such business as is forbidden in this act or in chapter 221

of the Public Laws of North Carolina of 1889," and affixed a penalty for so doing. The law of 1889, referred to, is the one of which we have just previously given a summary.

The acts made punishable by the first and second sections of the act of 1905 were thus defined in *State* v. *McGinnis, supra:*

"The business forbidden by the act of 1905 is—to avoid a *paraphrasis*, and following the usual American method of describing an act by a word or a phrase—the business of running a 'bucket shop,' which is defined by the Century Dictionary as 'an establishment, nominally for the transaction of a stock exchange business, or business of a similar character, but really for the registration of bets, or wagers, usually for small amounts, on the rise or fall of the prices of stocks, grain, oil, etc., there being no transfer or delivery of the stock or commodities nominally dealt in.' "

The third section provided that no person should be excused from testifying in any prosecution under the act of 1889, or its amendments, on the ground of self-incrimination, the section granting immunity to such persons so obliged to testify. It was declared by the fourth, fifth and sixth sections of the act that in all prosecutions for a violation of the provisions of the act of 1889, or the act of 1905, a *prima facie* presumption of guilt should arise from the proof of certain facts stated in the sections in question. These sections are reproduced in the margin.[1] The seventh and last section of the act contained

---

[1] SEC. 4. That in all prosecutions under said act and amendment, proof that the defendant was a party to a contract as agent or principal to sell and deliver any article, thing or property specified or named in said act, chapter 221, Public Laws of 1889, or that he was the agent, directly or indirectly, of any party in making, furthering or effectuating the same, or that he was the agent or officer of any corporation or association, or person in making, furthering or effectuating the same, and that the article, thing or property agreed to be sold and delivered was not actually delivered, and that settlement was made or agreed to be made, upon the difference in value of said article, thing, or property, shall constitute against such defendant *prima facie* evidence of guilt.

SEC. 5. That proof that anything of value agreed to be sold and delivered

provisions concerning dealing in futures by those engaged in the business of manufacturing or wholesale merchandising, which we do not presently reproduce, as we shall hereafter consider the section.

Gatewood, plaintiff in error, was indicted for the offense of establishing and keeping an office and place of business for the purpose of carrying on or engaging in the character of business made unlawful by the first section of the act of 1905; that. is, the opening and carrying on a "bucket shop." The indictment, moreover, in an additional paragraph alleged the doing of certain acts, as though it was intended to charge them as distinct offenses from the one charged in the first paragraph. The two things thus alleged were as follows: First. That, on a date named, the accused "unlawfully and willfully did post and publish, from information received over his wires, the fluctuations in prices of grain, cotton, provisions, stocks, bonds and other commodities, contrary to the form of statute in such case made and provided," the acts so charged being those from the proof of which it was provided in the sixth section of the act of 1905 that a *prima facie* presumption of guilt would arise as to the commission of the acts forbidden by the first section of that act. Second. That, on a date named, the accused "unlawfully and willfully did take and receive from E. T. Lea an order or contract to purchase on margin 100 bales of cotton for future delivery, to wit, August delivery, at 7 56.100 per pound, and that said Lea did deposit with said

---

was not actually delivered at the time of making the agreement to sell and deliver, and that one of the parties to such an agreement deposited or secured, or agreed to deposit or secure what are commonly called "margins," shall constitute *prima facie* evidence of a contract declared void by chapter 221 of the Public Laws of 1889.

Sec. 6. That proof that any person, corporation or other association of persons, either principals or agents, shall establish an office or place where are posted or published from information received the fluctuating prices of grain, cotton, provisions, stocks, bonds and other commodities or of any one or more of the same shall constitute *prima facie* evidence of being guilty of violating section 1 of this act and of chapter 221 of the Public Laws of 1889.

defendant at said time in said county the sum of $50.00 by way of margin fluctuations in said cotton, and that settlement between said parties for said cotton was agreed to be made upon the difference in value of said cotton at said date and the date of its delivery, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State." The acts thus charged being among those from which, when proved, there would arise a *prima facie* presumption of a guilty violation of certain of the provisions of the act of 1889.

The case was tried to a jury, and, as stated in the record, after proof and hearing, a special verdict was returned. By this verdict it was separately found that the defendant had committed the several acts separately charged in the indictment; that is, in separate numbered paragraphs the jury returred that the defendant had kept an office for the unlawful dealing in futures forbidden by the first section of the act of 1905, that he had posted and published in such office the fluctuating prices of grain, etc., and, that he had made the contract for future delivery upon margin with Lea. The evidence at the trial upon which the jury acted is not in the record. The court then directed a general verdict of guilty, and judgment was entered thereon. A motion for a new trial was made, "because the act of 1905, chapter —, is in conflict with the Fourteenth Amendment, section 1, of the Constitution of the United States, to wit, the guarantee of equal protection of the laws." The new trial having been refused, and a fine of five dollars and costs having been imposed, the case was taken to the Supreme Court of North Carolina. That court affirmed the conviction. The reasoning by which the action of the court was controlled was stated as follows: "Upon the authority of *State* v. *McGinnis*, at this term, there is no error." And in the judgment of affirmance there was embodied the record and opinion in *State* v. *McGinnis*, and such record and opinion are contained in the transcript before us.

The assignments of error and the argument in support thereof involve three general contentions, viz.: the asserted repugnancy of the statute to the equal protection of the law clause of the Fourteenth Amendment, and the alleged want of power of the State to enact the statute, because its provisions not only abridge the privileges and immunities of the plaintiff in error as a citizen of the United States, but also deprive him of his property without due process of law, in violation of the same Amendment. The contention that the statute denied the equal protection of the laws rests upon the terms of the seventh section, reading as follows:

"SEC. 7. That this act shall not be construed so as to apply to any person, firm, corporation, or his or their agent, engaged in the business of manufacturing or wholesale merchandising, in the purchase or sale of the necessary commodities required in the ordinary course of their business."

The alleged repugnancy of section 7, and consequently of the entire act to the equality clause of the Fourteenth Amendment, is sought to be sustained upon two grounds. First, because it is asserted that those engaged in the business of manufacturing or wholesale merchandising are permitted to commit without offense the act or acts which are made criminal by the laws of 1889 and 1905, when done by any other person; and, second, because, even if the terms of the seventh section do not effect such a result, the section nevertheless operates to produce an unlawful inequality, since it creates a *prima facie* presumption of guilt from the proof of certain acts as against all persons but those engaged in the business of manufacturing and wholesale merchandising.

It suffices to say, as to the first of these propositions, that the Supreme Court of the State, in the case upon the authority of which it placed its decision in this, expressly decided that the statute did not operate the asserted discrimination. Thus, after expressly holding that the effect of section 7 was not to relieve those engaged in manufacturing and wholesale merchandising from the operation of the provisions of section 1 of

the act of 1905, prohibiting the opening and keeping of a place for gambling dealings in futures, denominated by the court a "bucket shop," the court came to consider whether the provisions of section 7 operated to relieve manufacturers or wholesale merchants from the prohibitions of the act of 1889, concerning the making of gambling contracts for future delivery. Considering this subject, the court in express terms decided that the seventh section did not have that effect, since the dealings which were prohibited by the acts of 1889 were alike prohibited as to all, including manufacturers and wholesale merchants. The court said:

"Section 7 does not confer any exclusive right or privilege upon manufacturers or wholesale merchants. It does not authorize them to engage in any business prohibited by the act of 1889. It does not authorize them to speculate in cotton or other commodities. It simply provides that the courts shall not construe the act of 1905 to have the effect of preventing them from buying and selling for future delivery the necessary commodities required in their ordinary business.

\*        \*        \*        \*        \*        \*        \*        \*

"But a purchase for actual future delivery of necessary commodities, required in the ordinary course of business and not for 'wagering' or gambling on the fluctuations of the market, would not be against the statute. The statute of this State does not prohibit all purchases or sales for future delivery, but only such dealings as are in the nature of gambling or wagering contracts. Though section 7 mentions only manufacturers and wholesale mercantile establishments as authorized to make *bona fide* dealings in 'futures,' this was done unnecessarily, we think, and only out of abundant caution. It is not a discrimination, for there is no prohibition upon anyone else or any other business to buy commodities for future delivery *bona fide* in the 'ordinary course of such business,' when not for speculative or gambling purposes. That no other businesses or persons are mentioned as authorized to deal *bona fide* for the purchase of commodities on 'margin,'

is not an implied restriction upon others to do an act not forbidden by any statute."

In the argument it is insisted that the construction given by the Supreme Court of North Carolina to the statute is wrong, since in effect it reads out the provisions of section 7, and it is urged that it is the duty of this court to disregard the interpretations affixed by the state court, thereby bringing the statute within the prohibitions of the Fourteenth Amendment. But it is elementary that, under the circumstances, we must follow the construction given by the state court, and test the constitutionality of the statute under that view. *Armour Packing Co.* v. *Lacy*, 200 U. S. 226; *Smiley* v. *Kansas*, 196 U. S. 447, 455, and cases cited.

As to the second proposition, viz., the asserted discrimination, because of inequality produced by the engendering a *prima facie* presumption of guilt from the proof of certain acts when done by persons generally, and not raising such *prima facie* presumption from the same acts when done by those engaged in manufacturing or wholesale merchandising, we think the question is not open on this record. As we have stated, the indictment distinctly charged the commission of the offense prohibited by the first section of the act of 1905, viz., the keeping a place for gambling in futures, and at the same time in a separate paragraph charged the doing of acts from which the presumption of guilt was authorized by certain sections of the act of 1905. Upon the indictment so framed a special verdict was returned, finding that the prohibited place of business had been opened and kept as charged, and that the other acts separately charged in the indictment had been committed. Now, as the evidence upon which the jury acted is not in the record, and as there is nothing in the verdict tending to show that the separate conclusion as to the commission of the act forbidden by section 1 of the statute of 1905, viz., the keeping of a place for gambling in futures was found by the jury, because of the presumptions authorized by the statute, it cannot be affirmed that the finding of the jury

as to the keeping of the place for gambling in futures was not based upon independent evidence, wholly irrespective of any presumption authorized. by the act of 1905. And this conclusion becomes irresistible when it is considered that there is nothing in the record disclosing any request made to the trial court for instructions concerning the effect of the presumption created by the act of 1905, or that any express rulings on that subject were made by the court.

The contention that the judgment of conviction should be reversed, even although it does not appear that the same was based upon the presumptions authorized by the act of 1905, because of the inseparability of the alleged unequal presumptions is without merit. In *State* v. *McGinnis, supra,* after expressing an opinion as to the right of a State under its police power, without violating the Fourteenth Amendment, to create presumptions of guilt as to some classes of persons which would not be applicable to the same acts when done by other classes, the court said:

　 "But aside from what we have already said, the defendant is indicted for carrying on a 'bucket shop' business. The legislature had unquestioned power to make such business indictable. *Booth* v. *Illinois,* 186 Illinois, 43, and other cases cited, *supra.* The facts found are that the defendant was carrying on the forbidden business. It can in nowise affect the validity of the statute making such business indictable that the purchase of commodities by others upon 'margin,' shall under certain circumstances raise a *prima facie* case that such purchases were void, and under other circumstances shall not constitute such *prima facie* evidence. A statute may be void in part and valid in part. If the provision as to *prima facie* evidence, as to certain purchases, upon 'margin,' were null, because not applying to all purchases upon 'margin,' this would in nowise invalidate that part of the statute which forbids carrying on the business of running a 'bucket shop.' The defendant is not indicted for buying commodities for future delivery upon a 'margin;' nor are manufacturers and

wholesale merchants, nor anyone else, exempted from the prohibition of carrying on the 'bucket shop' business. Upon the special verdict the defendant was properly adjudged guilty."

This ruling as to the separability of the statute is conclusive, and refutes the contention that the entire law is void even upon the hypothesis that the creation of presumptions as to one class not applicable to another class or classes was repugnant to the Fourteenth Amendment.

It remains only to consider the contentions that the statute upon which the conviction was had was repugnant to the due process clause of the Fourteenth Amendment, and was, moreover, void because it abridged the privileges and immunities of the plaintiff in error as a citizen of the United States. As the first rests solely upon the proposition that there was a want of due process of law, because the State was without power to authorize a presumption of guilt on proof of the doing of certain acts specified in the statute, it is disposed of by what we have already said. And as the second was not pressed in argument, and is not shown by the record to have been raised or even suggested in the court below, we need not further consider it.

*Affirmed.*