STEWART, MOREHEAD & COMPANY *v.* POSTAL TELE-
GRAPH-CABLE COMPANY.

1. An executory agreement for the sale of goods to be delivered at a future day is valid; such a transaction will not be declared invalid unless it is made to appear that neither of the parties contemplated an actual delivery, and it was the intention of both that there should be no actual delivery, but on the day fixed for delivery there should be a settlement of differences based on the market value of the goods on that day.

2. A telegraph company owes a duty to serve the general public impartially and with due care.

3. A sendee of a telegram, who acts on the faith of a message negligently altered by the servants of the telegraph company in its transmission, and thereby sustains damage, may maintain an action in tort against the telegraph company for a breach of its public duty. The contrary dictum in *Brooke* v. *Western Un. Tel. Co.*, 119 *Ga.* 694 (46 S. E. 826), is disapproved.

4. Where a sender files with a telegraph company a message directing the addressee to buy for him certain goods at a specified price, and the message is negligently changed in the transmission so as to enlarge the price, and the addressee, on the faith of the message as delivered to him, buys the goods at the increased price named therein, and the sender refuses to ratify the act of the addressee, the latter may sue the telegraph company in tort for such damages as proximately result from the purchase of the goods on the faith of the erroneous telegram.

Argued January 7,— Decided July 15, 1908.

Action for damages. Before Judge Cann. Chatham superior court. March 9, 1907.

Stewart, Morehead & Company sued the Postal Telegraph-Cable Company for damages alleged to have been sustained because of an error in the transmission of a telegram. It appeared from the allegations of the petition that the telegraph company was a corporation holding itself out to the public as a company doing a telegraphic business and transmitting telegraphic messages for the public, and as such it had valuable franchises, and, upon the receipt of a message for transmission upon the payment or promise

of payment of its toll, it was charged with the duty to transmit promptly and accurately the messages received by it for transmission over its wires. On December 7, 1905, R. A. Brinson Jr. placed with the defendant at its office at Millen, Georgia, for transmission to plaintiffs at Savannah, Georgia, toll collect, a telegram in words and figures as follows: "Buy one March 12.20 for to-day only." The meaning of this message was that the plaintiffs should buy for the account and risk of the sender, and as agent of the sender, 100 bales of cotton for delivery during the month of March, 1906, at the price of 12.20 cents per pound on the basis of the grade of middling cotton. The message was not correctly transmitted and delivered, but by the negligence of the company the message was changed so that 12.20 was made to read 12.29. In accordance with the terms of the message as actually delivered, the plaintiffs bought for the account and risk of and as agents of the sender 100 bales of cotton to be delivered in March, 1906, at the price of 12.29 cents per pound, the purchase being a bona fide purchase of actual cotton to be actually delivered. After the purchase was made the sender notified the plaintiffs that the telegram as sent by him was an order for the purchase of cotton at 12.20 cents per pound, and not 12.29, as in the telegram delivered by the company; that the sender declined to ratify the purchase of the cotton at 12.29 cents per pound and refused to be responsible for the purchase of the cotton at the higher price. When the plaintiffs ascertained the error made by the company they sold the cotton on December 11, 1905. The price which plaintiffs paid for the cotton was $6,145, and they sold it at 11.92 cents per pound for $5,960, which was the best market price that could be obtained for the cotton at that time. The loss on the transaction was the difference between the purchase price and the selling price—$185, and also $15 commissions for buying and selling the cotton. By amendment it was alleged, that the plaintiffs bought the 100 bales of cotton from Ware and Leland, of New York; that the cotton, while agreed to be actually delivered, was not actually delivered, for the reason that the time of delivery agreed on had not arrived; that the place of delivery was to be New York, and the time of delivery was to be during the month of March, 1906. The loss suffered by plaintiffs "was through their having paid for said 100 bales of basis middling cotton $6,145,

and that said cotton when sold only brought the sum of $5,960, and that the difference amounting to $185 was an actual loss to plaintiffs;" that the number of pounds of cotton purchased was 50,000, its grade was a basis of middling, the price per pound at which it was purchased was 12.29 cents, and the price at which it was sold was 11.92 cents per pound; that the cotton was purchased from Ware and Leland, New York, on December 8, 1905, and sold to Ware and Leland on December 11, 1905. The commission of $15 for buying and selling was a commission of 7½ cents per bale on each of the 100 bales for buying the same, and a commission of 7½ cents per bale on each of the 100 bales for selling, which was the commission due by the custom of Savannah.

The court dismissed the petition on demurrer, and the plaintiffs excepted.

*Edward S. Elliott,* for plaintiffs.

*Garrard & Meldrim,* for defendant.

EVANS, P. J.   (After stating the facts.)

1.  The various averments of the petition have been stated with considerable elaboration, in order to fairly present the point made on demurrer that the transaction to which the message related was a contract for the purchase of "futures,"—a purely wagering contract. There are some indicia which might give rise to a suspicion that the transaction between the sender and sendee of the message concerned a purchase of "cotton futures" on margins, but this suspicion must be allayed by the positive and unequivocal statement that the contract was not of this character, but contemplated an actual purchase of actual cotton. A contract for the actual sale and delivery of cotton at a future time is not illegal. However, if it is made to appear that neither of the parties contemplated an actual delivery of the cotton, and that it was the intention of both that there should be no actual delivery, but that on the date fixed for delivery there should be a settlement of their differences, based on the market value of the goods on that day, the transaction would be a pure speculation upon chances. *Watson* v. *Hazlehurst,* 127 *Ga.* 298 (56 S. E. 459); *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R. 28); *Anderson* v. *Holbrook,* 128 *Ga.* 233 (57 S. E. 500, 11 L. R. A. (N. S.) 575); Civil Code, §3537. According to the allegations of the petition, the plaintiffs were commissioned by the

sender of the dispatch to purchase for him 100 bales of cotton at a stated price, to be delivered in New York at a stipulated time; and. he executed this commission by making a purchase of 100 bales of cotton at a certain price, to be actually delivered at a certain place and at a certain time. If this is really the truth of the transaction (and the demurrer admits this to be true), there is no speculative or wagering element in it.

2-4. The other point included in the demurrer is that the receiver of a telegram can not maintain an action against a telegraph company for any error in the transmission of the message. This point is not without difficulty, in view of the conflicting decisions of the courts respecting the basal foundations of liability of a telegraph company for damages proximately sustained by the receiver acting on a message which has become altered in its transmission and delivery. In England the receiver is denied a cause of action against a telegraph company for errors in the transmission of the message, on the ground that the company's obligation springs entirely from the contract, and that the contract is made with the sender of the message. Playford *v.* United Kingdom Elec. Tel. Co., L. R. 4 Q. B. 706. The courts of the United States very generally, if not universally, admit that the recipient of a message may sue for damages suffered from mistake in the transmission, but place the liability on different grounds. Some courts hold that the liability is contractual, but that the receiver of the message may sue on the contract, either on the theory that he is the beneficiary of it, though not a party to it, or that from the peculiar nature of its business the telegraph company is the common agent of the parties at both ends of wire. Frazier *v.* Western Union Tel. Co., 45 Ore. 414 (78 Pac. 330, 67 L. R. A. 319), and cases cited in notes to this case in 2 Ann. Cases, 396. Other courts find authority for giving the sendee a right of action in the general rule laid down by Lord Holt in Lane *v.* Cotton, 12 Mod. 488, that though a servant, as such, can not be charged for neglect, yet he may be made liable for a misfeasance as a wrong-doer, but not as a servant or agent. N. Y. & W. Printing Tel. Co. *v.* Dryburg, 35 Pa. St. 298 (78 Am. D. 338). And still others admit a cause of action in the sendee on the theory that a telegraph company is a public-service corporation, owing duties to the general public, and liable, to any member of

the public to whom it owes a duty, for damages proximately flowing from a violation of that duty. Western Un. Tel. Co. *v.* DuBois, 128 Ill. 248 (21 N. E. 4, 15 Am. St. R. 109) ; Western Un. Tel. Co. *v.* Waters, 139 Ala. 652 (36 So. 773) ; International Ocean Tel. Co. *v.* Sanders, 32 Fla. 434 (14 So. 148, 21 L. R. A. 810) ; Mentzer *v.* Western Union Tel. Co., 93 Iowa 752 (62 N. W. 1, 28 L. R. A. 72, 57 Am. St. R. 294) ; *Western Union Tel. Co.* v. *Cooper, 2 Ga. App.* 376 (58 S. E. 517) ; *Wilson* v. *Western Union Tel. Co., 124 Ga.* 131 (52 S. E. 153). We will not attempt to discuss the merits of these different theories, but give our assent to the conclusion reached by Mr. Street in his admirable treatise on the Foundations of Legal Liability, vol. 1, at page 438, that "the only satisfactory solution of the problem in all its aspects is to be found in the view which puts the right of action of the sendee on the ground of negligence viewed as a breach of pure legal duty." When we once classify a telegraph company as a public-service corporation, invested with a franchise to pursue a public calling and in so doing to exercise the right of eminent domain, if necessary, its correlative duty becomes plain that it must serve impartially and with due care all whom it attempts to serve, independently of the contractual one entered into when it received the message. Whether a telegraph company be a bailee for hire, or merely engaged in receiving orders for work and labor, and executing them, or be considered a common carrier, as variously denominated by the three judges of this court in *Western Union Tel. Co.* v. *Fontaine, 58 Ga.* 433, yet certain it is that when a telegraph company undertakes to serve the public, it owes a duty to the public. As was observed by Bleckley, C. J., in *Gray* v. *Western Union Tel. Co., 87 Ga.* 350 (13 S. E. 562, 14 L. R. A. 95, 27 Am. St. R. 259), "Their relation to the public imposes upon them the duty of undertaking as well as performing, and the violation of either duty is a misfeasance, a tort." The status of telegraph companies is more analogous to common carriers than to any other public agency, in their obligation to impartially serve the public, but with this substantial difference: a common carrier of goods is an insurer, but telegraph companies are only required to exercise due care and diligence in the correct transmission of the messages turned over to them. Jones on Telegraph and Telephone Companies, §§25-29. By extension of this

analogy it would seem that a telegraph company should be held liable for a breach of its duty under substantially the same conditions which would render a carrier liable, except as to the degree of care required in the transmission of the messages it receives for transmission.

This court has held that where one requests another to make an offer for the sale of an article, and the offer is made by telegraph, and the telegram as delivered to the addressee is materially different from the telegram delivered for transmission, the sender is bound by the terms of the proposal as contained in the telegram delivered to the addressee, and may recover from the telegraph company any damages which he has sustained in fulfilling a contract resulting from an acceptance of such proposal. *Western Union Tel. Co.* v. *Shotter,* 71 *Ga.* 760; *Western Union Tel. Co.* v. *Flint River Lumber Co.,* 114 *Ga.* 576 (40 S. E. 815, 88 Am. St. R. 36). Nothing is said in either of these cases tending to deny the liability of a telegraph company in a tort action for a breach of duty to either the sender or the sendee of a message. It is not infrequently the case that a party has an election of remedies. An apposite illustration may be given in the case of a shipper of goods against a carrier for their loss. The shipper may at his election sue the carrier in assumpsit for the breach of the contract of carriage, or he may sue in tort for the breach of public duty in failing to carry his goods. It does not, follow, because in the transmission of the message the telegraph company may be the agent of the sender, that it is relieved of its public duty to transmit the message with due care and promptness. These decisions do not limit the telegraph company's liability to damages caused solely by breach of contract. It may be contended on the authority of these cases that when the plaintiffs bought the cotton of Ware and Leland, the sender of the message could not repudiate the terms of the message as actually delivered to the plaintiffs, and that the contract for the purchase of the cotton was binding on the sender, and if any one is hurt by the mistake in the telegram it is the sender. The addressee in the case at bar was also the agent of the sender, and acted on a message erroneously transmitted by the telegraph company. The plaintiffs are bound by their contract with Ware and Leland, and Ware and Leland have the right to hold the plaintiffs to its terms. If the sender of the

message is bound to Ware and Leland, it would be on the theory that he was the undisclosed principal of the plaintiffs. An agent contracting in his own name can not avoid the consequences of his contract by pleading that he was acting as the agent of another. *Bedell* v. *Scarlett, 75 Ga.* 56. From whom may the plaintiffs look for reimbursement? Conceding that the sender of the dispatch is liable over to the plaintiffs by virtue of the contractual relations between them, this will not absolve the telegraph company from liability arising from its breach of public duty. A tort-feasor can not say to one injured by his tort that he is exempt from liability because the injured party may also have an action in contract with some one else. The sender of the message has not sustained any damages, and therefore the telegraph company is not subject to suit by him. The plaintiffs acted upon the erroneous message to their hurt; and if the error was caused by the negligence of the telegraph company in the performance of its public duty, and resulted in damage to the plaintiffs, the telegraph company would be liable to them.

The case of *Brooke* v. *Western Union Tel. Co.,* 119 *Ga.* 694 (46 S. E. 826), is not altogether similar to the present case on its facts. The decision was not participated in by the entire court; and in so far as it denies a right of action ex delicto to an addressee of a telegram against a telegraph company for damages proximately caused by an error in transmission, it is disapproved.

The measure of damages was not argued, and we forbear discussion for that reason. We think the petition stated a cause of action, and that the court erred in dismissing it on demurrer.

*Judgment reversed.    All the Justices concur.*