## FENNER et al. v. BOYKIN et al.

(District Court, N. D. Georgia. January 22, 1925.)

**1. Courts ⟺303(2)—Suit to enjoin institution of criminal prosecution not a suit against the state.**

A suit against prosecuting and arresting officers of a state to enjoin the instituting of criminal prosecutions against complainants, under a statute which as construed by them is an unconstitutional interference with interstate commerce and is about to be used to destroy a valuable and lawful business, is not a suit against the state and is within the jurisdiction of a federal court.

**2. Courts ⟺508(7)—Suit to enjoin institution of criminal prosecution not one to "stay proceedings in state court."**

A suit in a federal court to enjoin prosecuting officers of a state from instituting .a criminal prosecution is not one to "stay proceedings in a state court," within Judicial ·Code, § 265 (Comp. St. § 1242).

**3. Commerce ⟺40(I)—Taking orders on which contracts are made and executed in another state is not "interstate, commerce."**

The taking of orders in one state for. the purchase or sale of a commodity on an exchange in another state, where the contracts are made and to be executed, does not constitute "interstate commerce."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**4. Gaming ⟺12—Georgia act prohibiting "dealing in futures on margins" held to apply only to gambling contracts.**

Civ. Code Ga. 1910, § 4257 et seq., prohibiting and making a criminal offense "the establishment, maintenance or operation in the state of a place for the purpose of carrying on or engaging in the business forbidden by this act, commonly called dealing in futures on margins"

as such business is defined in the act, does not apply to contracts for future delivery, where there is an intent that the commodity bought shall actually be delivered, but only to transactions where it is the intent to gamble on the fluctuation of the market.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deal—Dealing.]

**5. Constitutional law ⚍295—Gaming ⚍3—Statute prohibiting margin contracts not unconstitutional.**

, A state statute prohibiting contracts for future delivery in all cases where margins are deposited is not unconstitutional as a deprivation of liberty or property without due process of law, but is within the police power of the state.

**6. Constitutional law ⚍55 — Presumptions cannot be made sufficient evidence of crime.**

In general a state Legislature may prescribe rules of evidence and may create presumptions of the existence of a fact or fault from given facts, if there is really some connection between them in reason or experience, provided there is a fair opportunity for rebuttal allowed; but it may not enact that facts which it could not declare to be a crime, shall be sufficient, though only prima facie, evidence of one.

**7. Statutes ⚍64(7)—Invalidity of provision creating presumptions held not to invalidate body of act.**

That a provision of a statute creating presumptions is invalid *held* not to invalidate the body of the act.

**8. Injunction ⚍128—Grounds for injunction against institution of criminal prosecutions under state statute not shown.**

Complainants *held* not to have shown grounds for an injunction to restrain criminal prosecutions against them under a state statute.

In Equity. Suit by Charles E. Fenner and others against John A. Boykin and James I. Lowry. On motion for preliminary injunction. Denied.

Little, Powell, Smith & Goldstein and Thomas W. Hardwick, all of Atlanta, Ga., for plaintiffs.

Hooper Alexander, James W. Austin, and John A. Boykin, all of Atlanta, Ga., for defendants.

Before BRYAN, Circuit Judge, and BARRETT and SIBLEY, District Judges.

SIBLEY, District Judge. The defendants Boykin and Lowry are the Solicitor General and sheriff in Fulton county, Ga., charged respectively with the general duty of prosecuting crimes and arresting offenders. The petitioners, according to the petition and proof submitted, are citizens of other states, brokers and members of the cotton and other exchanges in New York, New Orleans, and Chicago, who operate in Fulton county, Ga., a branch office in which are solicited and received for execution on these exchanges orders which are generally margined to secure the broker against loss in executing them. Transactions in "future cotton" are here particularly in question, and the discussion will be limited to them.

In this branch office a "board" is maintained whereon are posted the fluctuations in the market price of commodities as obtained by private wire from the exchanges. All transactions are for execution in the exchanges, whose operation is so far regulated by law and of general knowledge as to require no detailed statement. There each order results in a contract with another broker. No contracts are made in Georgia, and no cotton under them is to be delivered in Georgia, but only in the state where the contract is made and out of warehouses located there. In point of fact, the customer in Georgia rarely makes or receives delivery of the cotton contracted for, but the contracts are mostly closed as to the customer by a counter contract, and are offset or rung out by the brokers in the exchanges finally. The customer is settled with by charging to his margins or paying to him the difference between the price of the commodity in his two contracts. The Georgia statute, passed in 1906 and before petitioners began business in Georgia, generally stated, prohibits and punishes, in section 1, "the establishment, maintenance or operation in the state of a place for the purpose of carrying on or engaging in the business forbidden by this act, commonly called dealing in futures on margins." Section 2 defines more fully the contracts and transactions constituting the forbidden business. Section 3 punishes any person becoming a party to, furthering, effectuating, or aiding in the making of such a contract. Section 4 gives immunity to persons testifying. Sections 5 and 6 make proof of certain facts presumptive evidence of guilt under section 3. And section 7 makes an office or place where the fluctuations of prices of commodities are posted or published presumptively a violation of section 1. Section 8 prohibits the act being so construed as to apply to commercial exchanges or other bona fide trade organizations where no sales for future delivery on margins are permitted.

The Solicitor General was preparing to bring prosecutions in Fulton superior court

against the petitioners and their local employees, had subpœnaed certain employees and customers to appear as witnesses before the grand jury then in session and to bring certain records and papers with them, and arrests by the sheriff were likely to ensue.

This bill was filed to enjoin the prosecution of petitioners and their employees and the arrest of the latter on the ground that there was no law to authorize the proceedings; that their business was a lawful one, and constituted interstate commerce, and would be wholly destroyed in consequence of repeated prosecutions of employees and customers; that the Georgia statute, under color of which the petitioners were about to be prosecuted, if construed not to apply to petitioners' business, did not justify the defendants who were thus acting in excess of their lawful authority; and if construed to apply to petitioners' business was unconstitutional as taking their right of property in their business without due process of law; as regulating interstate commerce; and in the matter of the presumptions raised by it, unduly burdening interstate commerce and denying the equal protection of the laws.

The answer challenges the power of the court to enjoin both because of the Eleventh Amendment of the Constitution, in that the suit is substantially against the state of Georgia; and because of Judicial Code, § 265 (Comp. St. § 1242), forbidding injunction of proceedings in a state court. It sets up that the grand jury, pending this hearing, a restraining order having been refused, had actually indicted the petitioners and one of their agents for violation of section 1 and for the offense of keeping a gaming house, but that further indictment of them was not contemplated unless they should continue unlawful practices after conviction. It is also averred that while the presumptions raised by the act will be relied on, full and direct evidence of the crimes charged will also be presented.

[1] The state of Georgia is not a party on the face of this bill, but is a party to the criminal case sought to be enjoined. The indictment alleges the thing done to be contrary to the laws of said state, the good order, peace, and dignity thereof, and the vindication of these is the state's interest in the prosecution. This bill seeks to enjoin the prosecuting and arresting officers of the state who have and claim no interest in the controversy, save in behalf of the state. The statute sought to be enforced by them is not like a rate statute

made without hearing, whose validity must depend on its reasonableness, and so involve a judicial question from its outset, but is about a matter of police which is within the general power of the state. A distinction may exist between the two classes of statutes, but it goes rather to the propriety than to the power of interference. Because the petition claims that the statute is being so construed as to make it an unconstitutional interference with interstate commerce and is about to be used to destroy a valuable and lawful business, with no adequate remedy by test in the criminal courts, in consequence of which the defendants are not really representing and acting for the state of Georgia, there being no direct and special mandate to them to do the particular thing they are about to do, we assume jurisdiction of the inquiry. Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283.

[2] Judicial Code, § 265, does not prohibit the inquiry. Neither the grand jury nor the court of which it is a part will ever be enjoined. Ex parte Young, supra, at page 163 (28 S. Ct. 441). Nothing will prevent their action save a regard for the harmony of the judiciary. Though the injunction of solicitor and sheriff would be a substantial injunction of the prosecution, it is not prevented by section 265 because of the well-recognized exception whereby the federal court may thus protect the jurisdiction first acquired by it. The investigation entered upon by the grand jury was not a prosecution. When this bill was filed no indictment had been prepared by the Solicitor General and laid before the grand jury. This court may prevent his making one since the filing of this bill, or prosecuting one since found, until it shall have fully exhausted its jurisdiction in the premises. Ex parte Young, supra, at pages 161, 162 (28 S. Ct. 441); Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

[3] Passing to the merits, we do not think the business alleged to be interfered with and burdened is interstate commerce. If the Georgia act prohibits in Georgia the business which petitioners claim to be doing, the commerce clause of the Constitution is not offended. The cotton or other property bought and sold in the New York and New Orleans exchanges is deliverable there. While this may have moved in com-

merce from state to state, no such movement occurs in pursuance of these sales. The exchanges themselves may be an aid or an obstruction to interstate commerce and so regulable by Congress. Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Board of Trade v. Olsen, 262 U. S. 1, 43 S. Ct. 470, 67 L. Ed. 839; Stafford v. Wallace, 258 U. S. 495, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229. But the particular transactions of the brokers in them are not, nor is correspondence from Georgia to New York or New Orleans, whereby these contracts are brought about, interstate commerce. Ware & Leland v. Mobile County, 209 U. S. 405, 28 S. Ct. 526, 52 L. Ed. 855, 14 Ann. Cas. 1031; Hill v. Wallace, at page 69 (42 S. Ct. 453).

[4, 5] But the statute is, we think, to be construed as condemning only gaming transactions and not all sales for future delivery where a margin is deposited in lieu of full payment or full credit given. The earlier Georgia decisions did not clearly mark the distinction between contracts for future delivery where there was an intent that the goods bought should really be delivered and those in which neither party had such intent, but assumed all contracts for future delivery made on margins to be gaming. See Cunningham v. National Bank, 71 Ga. 403, 51 Am. Rep. 266; Alexander v. State, 86 Ga. 246, 12 S. E. 408, 10 L. R. A. 859. In 1900 the question received elaborate consideration in Forsyth Mfg. Co. v. Castlen, 112 Ga. 199, 37 S. E. 485, 81 Am. St. Rep. 28, and in line with the general rule elsewhere, contracts for future delivery were held valid though the seller had not the property sold, if either party contemplated an actual delivery, but to be gaming and contrary to public policy if neither party so intended but both expected to settle by the fluctuation in market price of the goods contracted for. The statute here in question was passed a few years later. Its title indicates a purpose to prohibit what was "commonly known as dealing in futures," and the establishment or operation of a place where "such contracts" are made or offered. Taking up the latter purpose first, section 1 prohibited the establishment or operation of an office or place of business for the purpose of carrying on or engaging in the business "forbidden by this act commonly called dealing in futures on margins." Necessarily other portions of the act must be looked to to see what business was forbidden by it. Section 2 contains the elaboration and de-

scribes "what is commonly called dealing in futures" as being a contract or agreement for the sale of commodities whether made or to be performed wholly within the state or partly within and partly without the state "when in fact it is not in good faith intended by the parties that an actual delivery of the articles or thing" was to be made and "when the intention or understanding of the parties is to receive or pay the difference between the agreed price and the market price at the time of settlement." The act, therefore, is but a legislative sanction of the law as stated in the Castlen Case and imposes penalties as for a crime upon what was already unlawful. The sections raising presumptions show that the intent of the parties is to be a part of the crime, for otherwise the presumptions would be useless. That no other or broader rule of illegality of contracts was established by this act is shown by the steady adherence since, by the Georgia courts, to the Castlen decision. Among other cases, see Stewart v. Postal Telegraph Co., 131 Ga. 31, 61 S. E. 1045, 18 L. R. A. (N. S.) 692, 127 Am. St. Rep. 205; Robson v. Weil, 142 Ga. 429, 83 S. E. 207. In Terry v. International Cotton Co., 138 Ga. 656, 75 S. E. 1044. Civil Code, § 4258, which contains section 2 of this statute, is cited along with the Castlen Case as authority for the rule. Transactions such as are here condemned are not commerce at all, and if carried on across state lines are not sanctified thereby. They are not interstate commerce, but interstate gambling. Alexander v. State, 86 Ga. 246, 12 S. E. 408, 10 L. R. A. 859. Even if the statute forbids transactions for future delivery in all cases where margins are deposited, it is not a deprivation of liberty or property without due process of law, but a valid exercise of police power. Booth v. Illinois, 184 U. S. 425, 22 S. Ct. 425, 46 L. Ed. 623; Otis v. Parker, 187 U. S. 606, 23 S. Ct. 168, 47 L. Ed. 323.

[6, 7] It is further urged that though the statute be valid as to the substance of the offenses which it denounces, the sections which make innocent acts presumptive evidence of guilt are violative of the due process clause and equal protection clause of the Fourteenth Amendment, in placing upon the accused the burden of disproving guilt; and that it unduly burdens interstate commerce thereby. In general a state Legislature may prescribe rules of evidence and may create presumptions of the existence of a fact or fault from given facts if there is really some connection between

them in reason or experience, although the facts on which the presumption is founded are not cogent proof and may be consistent with contrary conclusions; provided there is a fair opportunity of rebuttal allowed. Thus an injury from the running of a train may be made presumptive evidence of negligence on the part of the railroad company, though the injury might equally have happened by accident or the fault of the person injured. Mobile Railroad v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. This is the rule where the Legislature has plenary power over the subject. But if its power is limited it may not enact that facts which it is prohibited from making a crime shall be sufficient, though only prima facie evidence of crime. Bailey v. Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191. Buying and selling cotton and other commodities mentioned in the Georgia statute, for future delivery, on margins, and settling the contract without delivery, as mentioned in sections 5 and 6, is a notoriously common method of gaming between persons who never intend delivery, lending itself readily to that abuse, though also consistent with legitimate dealing. So maintaining a "board" where are posted the fluctuations of the market is a great temptation to this form of gaming and a usual feature of a place where such gaming is done. There is such a connection in experience between these features of place and dealings as to make it proper to declare them presumptive of a gaming intent and put the parties concerned on explanation. If they engage in equivocal practices it is not unreasonable to require that they be prepared to show the actual innocence of them. But if because of possible interference with interstate commerce in contracts where actual transportation from state to state is involved (though the business of petitioners we have held not to be such), or if because of the alleged discrimination in section 8, these sections raising presumptions should be held invalid, they are separable from the body of the act. In the case of Bailey v. Alabama, supra, the unconstitutional presumption was alone held invalid and the case was reversed to be tried anew without the aid of the presumption. So in Gatewood v. North Carolina, 203 U. S. 531, 27 S. Ct. 167, 51 L. Ed. 305, where was involved a statute very much like the Georgia statute and creating similar presumptions and having a similar discrimination, the court did not pass upon the validity of the presumptions, but upheld the conviction because it did not appear that it was not founded on full evidence independent of the presumptions. If the invalidity of the presumptions would have destroyed the whole legislation, this disposition could not have been given the case.

[8] The indictment against petitioners here, both as to the charge of maintaining a place of business for dealing in futures on margins and as to the charge of maintaining a gaming house, is founded on valid laws denouncing these crimes. No attack, indeed, is made upon the latter. Georgia Penal Code, § 389. The petitioners are properly triable under it in the state court. Their asserted innocence is ground for acquittal there, but not for injunction here. What proof is sufficient for conviction will be an issue in that trial, and all questions concerning it may be made then and orderly reviewed. The answer here avers that the state expects to present full and direct evidence of guilt as well as to rely on the statutory presumptions. No purpose to prosecute oppressively is shown and no sufficient reason for interference with the orderly processes of the criminal laws of the state.

The interlocutory injunction should be refused. Hygrade Provision Co. v. Sherman (January 5, 1925) 45 S. Ct. 141, 69 L. Ed. ——.