## FURNALD v. GLENN.

### (Circuit Court of Appeals, Second Circuit. October 15, 1894.)

### No. 123.

1. Equity—Enjoining Proceedings in Another Court.
   A court of equity will not interfere to set aside an interlocutory decree in a cause then pending in another court. The party complaining of such a decree has a sufficient remedy by applying to the court which made it, and it would be most unseemly and an intolerable interference with the ordinary administration of justice, for another court to assume to interpose.

2. Same—Action in State Court.
   A Virginia corporation, being insolvent, executed a deed of trust for the benefit of creditors; and subsequently, in a suit in equity in a Virginia court, instituted by creditors, and to which the corporation, some of its directors and the trustees under the deed, were parties, an account of its affairs was taken, its debts ascertained, the deed of trust adjudged valid, and a new trustee appointed by the court, and directed to sue stockholders for unpaid subscriptions. While such suit was still pending, awaiting reports of the trustee before final adjustment of the claims of creditors, etc., the trustee sued complainant in this court to recover a subscription to stock, and complainant filed this bill to restrain the prosecution of the trustee's action at law, alleging fraud and collusion between the trustee and creditors and some of the directors of the corporation, in the Virginia suit, to exaggerate claims against the corporation, and throw the burden of loss upon nonresident stockholders, and praying that the decrees of the Virginia court might be declared null and void, the trustee enjoined from prosecuting his action, or that an account might be taken of the liabilities and assets of the corporation and the moneys received by the trustee. *Held*, that while the United States circuit court is not precluded from exercising, in proper cases, the inherent jurisdiction of courts of equity to restrain actions at law, though the particular action may be based on the judgment of a state court, it would be wholly improper, and an intolerable interference with the orderly administration of justice, for a court of equity to undertake to annul the interlocutory decree of another such court in a pending cause, especially when the latter court is the forum where the litigation naturally belongs, when all parties are before it, and have full opportunity to apply in it for redress of their grievances, and when the party applying has long neglected to avail himself of such opportunity.

3. Equity Practice—Parties—Stockholders of Corporation.
   In a suit to ascertain the indebtedness of an insolvent corporation, collect the assets, and apply them to pay the debts, the corporation represents the stockholders, and there is no necessity for making them parties.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit by Francis P. Furnald against John Glenn to restrain the prosecution of a suit at law. From a decree dismissing the bill of complaint (56 Fed. 372), complainant appealed to this court.

George Zabriskie and J. Archibald Murray, for appellant.

Charles Marshall, Arthur H. Masten, and Burton N. Harrison, for appellee.

Before BROWN, Circuit Justice, and WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The complainant appeals from a decree of the circuit court for the southern district of New York dismissing his bill, filed to restrain the prosecution of a suit at law pending in that court, brought against him by John Glenn, trustee, etc. In the suit at law the present complainant is alleged to be a stockholder of the National Express & Transportation Company, a Virginia corporation, which became financially embarrassed in September, 1866, and executed a deed of trust to Hoge and others, as trustees for the benefit of its creditors. It owed debts for borrowed money, services rendered, and other obligations, amounting to about $273,000, and its principal assets consisted of unpaid subscriptions from stockholders, amounting to over $3,000,000. Its stockholders, at a meeting assembled for considering the situation, adopted a resolution instructing the directors to make a call upon the unpaid stock for the purpose of extricating the company and paying its debts. This was the last meeting ever held, and nothing was done to carry the resolution into effect. The trustees under the trust undertook to collect some of the assets, but accomplished little. In November, 1871, a creditors' suit was brought by W. W. Glenn, in chancery court of the city of Richmond, in Virginia, in behalf of himself and such other creditors of the company as might become parties, to obtain a construction of the deed of trust, ascertain the indebtedness of the company, compel the board of directors to make a call upon the stockholders for enough of their unpaid subscriptions to satisfy the debts, to appoint a receiver to collect the assets, and to have the moneys collected brought into court, and applied to the payment of the debts. Although the trustees and some of the directors were made parties, the corporation was not served with process in the suit, nothing of practical value was accomplished, and the efforts of the attorneys for the creditors seem to have been spent in a vain attempt to induce the officers to appear for the corporation and co-operate in the purposes of the suit. In 1879, however, an amended and supplemental bill was filed, and the corporation was served with process by service upon Anderson, a director. The Baltimore & Ohio Railroad Company, the Bank of Commerce of Baltimore, and the Philadelphia, Delaware & Baltimore Railroad Company, creditors of the express company, intervened, upon petition, asking to be made coplaintiffs in the suit, and their petitions were granted. A decree pro confesso was made, and an order of reference to a commissioner to take an account of the debts of the company. The claims of a large number of creditors were proved before the commissioner. The suit then proceeded to an interlocutory decree, which was made December 14, 1880. That decree adjudged, among other things, that the deed of trust made by the company was valid, and passed to the trustees and their successors all the property of the corporation, including the amount unpaid on the stock and not called; that the trustees, nevertheless, had no legal right to sue for or recover the same until called by the company or by the court on default of the company; that there was due certain indebtedness specified in the report of the commissioner, to whom it had been referred to ascertain the debts of the company,

and the aggregate amount thereof was about $509,392; that there were no means of payment except the amount of the capital stock which had not been called; that a call of 30 per cent. was necessary, and was thereby ordered, and the several stockholders of the company were required to pay the same; and that the suit be retained for future consideration as to the priority of payment of the debts, and for further action of the court in case other calls or assessments should be necessary. The decree also removed the trustees under the trust deed, and appointed John Glenn trustee in their place; and he was directed from time to time to make to the court a report, and the distribution of the fund among those entitled thereto was reserved for the consideration of the court upon the reports of the trustee. In July, 1883, a further decree was made in the cause, authorizing Glenn, as trustee, on the payment to him within six months from that date, by any person liable as a subscriber for the stock, of 25 per cent. of the original amount of the subscription, to execute a receipt therefor, which should operate as a full acquittance and discharge on account of such subscription. The court also ordered that notice be given, by mail, of a copy of the decree to every person against whom any liability was asserted in the suit. Notice of that order was given to all these persons pursuant to the terms of the decree. In April, 1884, certain stockholders of the company filed a petition, in behalf of themselves and all other stockholders who desired to join, to set aside the decree. and for a rehearing of the cause. Pending the disposition of this petition, the suit was removed from the chancery court of Richmond to the circuit court of Henrico county. Answers were filed by the parties plaintiff to the petition of the stockholders, and proofs were taken upon the issues made by the petition and answers. Upon that hearing, among other things, it was insisted for the petitioners that the corporation was never properly before the court, and the court was without jurisdiction to render the decree; that the stockholders were not represented in fact; and that the claims allowed against the company were barred by the statute of limitations. March 4, 1885, the court made a further decree, dismissing the petition conditionally. That decree contained the following clause:

"But this decree is to be without prejudice to any subsequent application of the petitioner or other stockholders to reopen the decree entered in this cause on the 14th day of December, 1880, so far as may be necessary to inquire into the validity of any of the debts against said company recognized in said decree; such application to set out sufficient reasons to justify the court in reopening the decree for said purpose, and to be accompanied with a tender of adequate security to pay all the costs awarded to any party, and all damages sustained by any party by reason of such application, and in other respects to abide the judgment of this court."

Subsequently, decrees were made in the cause for further calls upon the stockholders for unpaid subscriptions. December 13, 1886, Glenn, the trustee appointed by the decree, brought suits in the circuit court of the United States of the southern district of New York against a number of alleged stockholders, among them one against the complainant, to recover the judicial calls made by the

decrees of the Virginia courts. The present bill was filed to restrain the prosecution of that suit. It proceeds upon the theory that neither the company, the complainant, nor any person representing stockholders was made a party in the Virginia suit; that the creditors, the trustees under the trust deed, and some of the directors colluded to deprive the stockholders of any opportunity to contest the claims of the alleged creditors; that, by their connivance, claims were established by the decree without adequate evidence, and others were established as to which there were valid defenses which were intentionally concealed from the court; that 'the compromises made with various stockholders, pursuant to the order of the court, were unjustifiable, and inequitably increased the liability of other stockholders; and that generally the proceedings were fraudulently conducted, in order to make the claims against the company as large as possible, and charge the burden of the adjudged indebtedness on the nonresident stockholders. The prayer of the bill is that the decrees of the chancery court of the city of Richmond and the circuit court of Henrico county may be adjudged to have been made without jurisdiction, and to have been procured by fraud and collusion, and to be null and void; and for an injunction against setting up or enforcing them, and restraining Glenn from proceeding in his action at law. It also prays as alternative relief that an account be taken of the liabilities and assets of the company, and that, in taking the account, proof be taken of the validity of all claims set up against the company, and that the trustee be required to account for all property received by him or his predecessors in the trust, and charged with the whole amount unpaid on the compromised subscriptions.

Great industry and astuteness on the part of counsel have been displayed in presenting by the bill and proofs every circumstance which can in any conceivable way militate against the good faith and the legal effect of the proceedings in the Virginia suit, but there is such a manifest want of equity in the attempt made by the bill to transfer to a foreign forum a litigation which properly belongs to the courts of Virginia,—the state where the corporation was domiciled, and in reference to whose laws the stockholders contracted,—which is still pending in the court of original jurisdiction, and when that court remains open to the complainant and other stockholders for all necessary redress of their grievances, that a few controlling considerations will suffice to dispose of the case without any extended discussion of collateral questions.

The averment that the corporation was never made a party to the Virginia suit can be safely disregarded. If true, there was no occasion for the bill, and an appeal to a court of equity is unnecessary, because the fact would nullify the proceedings and the decree in the Virginia suit, and afford a simple and perfect defense to the suit at law. Notwithstanding the testimony of Anderson, who is in doubt whether he was ever a director, but is confident that, if he ever was, he had resigned before service of process upon him, we think that he was a director when served, and consequently that the corporation was regularly made a party to the suit. Lewis'

Adm'r v. Glenn, 84 Va. 947, 6 S. E. 866. The corporation in such a suit represents the stockholders, and there is no necessity for making them parties. They are parties by representation, and are effectually present. Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739.

The theory that the trustees or directors colluded with the creditors to deprive the stockholders of an opportunity to be represented cannot be accepted. At the inception of the suit, the counsel for the creditors labored with Perot, the president, to induce him to have the corporation appear and answer; and, when process was finally issued against the corporation, attempts were made to serve it in every practicable method. Although the corporation and stockholders were not heard in the proceedings, this was not by the procurement or purpose of the creditors, but because of the neglect of the agents of the stockholders, the officers of the corporation, who seem to have preferred to disclaim any responsibility as directors or liability as stockholders, and trust to the chances of litigation for immunity. If the corporation had appeared and contested the suit, it is entirely plain that the decree could not have properly been other than it was, except in a single particular. This is shown by the judgments of the court of appeals of Virginia in Lewis' Adm'r v. Glenn, 84 Va. 947, 6 S. E. 866, and Hamilton v. Glenn, 85 Va. 901, 9 S. E. 129. It may be that there were valid defenses to some of the claims, in whole or in part, which were established by the creditors against the corporation, and consequently that the decree erroneously fixed the aggregate of indebtedness upon which the assessment was based; but in all other respects the decree is not subject to any just criticism; and if it is true that as to some of these claims there were valid defenses known to the creditors who proved them, and concealed in order to mislead the court, it is beyond doubt that many of the claims proved were in all respects honest and valid obligations of the company, and the creditors who proved them had no interest in promoting the invalid claims, and did not participate in doing so. The attempt to infect the valid claims, and impute to the creditors proving them knowledge and participation in the proof of the dishonest or invalid ones, because all the claims were represented by the same solicitors, and the solicitors knew of the defenses which might have been made, is a violent use of the doctrine of presumptive fraud. The considerations presented to us to show that there was no good defense to these claims, if they have not fully convinced us, were probably sufficient to convince these solicitors. Under these circumstances a court of equity is asked to annul a decree of another court of equity in a pending cause, to which court and cause the stockholders can now resort to redress any errors of which they can reasonably complain.

The circuit court of the United States are not precluded from exercising in proper cases the inherent jurisdiction of courts of equity to restrain the prosecution of unconscionable actions at law, notwithstanding the particular action may be based upon the judgment of a state court. Payne v. Hook, 7 Wall. 425; Barrow v. Hunton, 99 U. S. 80; Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619; Marshall v. Holmes, 141 U. S. 589, 12 Sup. Ct. 62; Mississippi Mills

v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75.   How far they can with propriety undertake to review and nullify a decree of a court of equity, impeached for fraud, made by a state court having plenary jurisdiction and the usual powers of courts of equity, by bill of review and otherwise, to revise their own proceedings and decrees, we are not now called upon to consider.   We are asked to annul the interlocutory decree of the Virginia court; and, if this were done, the only effect would be to leave the cause to proceed in that court just as though the decree had not been made.   The corporation is not a party here; the trustees to whom it transferred all its assets are not parties; the creditors who intervened and made themselves parties to the suit are not here, and, the decree being adjudged null for fraud, none of them would be represented by the trustee who derives all his authority by it; and, under such conditions, the theory that the court below could take an account of the liabilities and assets of the company, and proceed to assess the stockholders and satisfy the debts, is preposterous.   No authority has been cited for the proposition that one court of equity will undertake to annul the interlocutory decree of another court of equity; and there is no support for it upon principle or in good sense.   The party complaining of such a decree has a sufficient remedy by applying to the court which made it, and it would be most unseemly, and an intolerable interference with the orderly administration of justice, for another court to assume to interpose.   That the decree is interlocutory merely is settled by the decisions of the highest court of Virginia. Rawlings v. Rawlings, 75 Va. 76; Thomson v. Brooke, 76 Va. 160. In Virginia, as elsewhere, the rule is that only those decrees are final in which no further order of the court is necessary to give completely the relief contemplated by the court; and until final decree the court has full control over the cause.   In the courts of Virginia this rule is especially pronounced.   Cocke's Adm'r v. Gilpin, 1 Rob. (Va.) 20; Ryan's Adm'r v. McLeod, 32 Grat. 367.   It is well established by the authorities that equity will not interfere to set aside proceedings in an action in another court upon charges of fraud, where the party seeking its aid has been guilty of laches or fault, or when relief is open in the original action to the complaining party by a proper application.   Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263; Dufossat v. Berens, 18 La. Ann. 339; Dalhoff v. Keenan, 66 Iowa, 679, 24 N. W. 273; Brown v. County of Buena Vista, 95 U. S. 157; Nougue v. Clapp, 101 U. S. 551; Graham v. Railroad Co., 118 U. S. 161, 6 Sup. Ct. 1009.

The provision made in the interlocutory decree reserving the privilege to any stockholder of the company to apply to reopen the decree, and contest the validity of any debt against the company recognized by it, was accompanied with just and reasonable conditions, and was in all respects a wise exercise of judicial discretion. The complainant was informed as early as in July, 1883, of the pendency and nature of the Virginia suit.   From that time until the commencement of the suit at law to recover the assessment, he had an opportunity to acquaint himself with the proceedings, and intervene to reopen the decree,—a privilege which was given by the court

to other stockholders, and was subsequently preserved for all stockholders by the formal amendment of the decree. When he filed the present bill, that remedy was still open to him; and, so far as appears, he can still resort to it. It would be grossly inequitable towards the creditors whose honest claims are established by that decree, after this lapse of time, and when possibly they may have lost the evidence of their claims, to vacate the decree, and undo all the subsequent proceedings in the suit.

We are of the opinion that the court below properly dismissed the complainant's bill. To sanction his suit would be to countenance similar suits on behalf of each stockholder who may be sued for an assessment in any of the courts of the score of states in which the stockholders are to be found. The spectacle of a multitude of courts sitting concurrently in review of an interlocutory decree of a Virginia court, and assuming to control its proceedings, would be a reproach and disgrace to our jurisprudence. The decree of the circuit court is affirmed, with costs.