**CAROLINA–VIRGINIA RACING ASS'N, Inc.**

v.

**CAHOON et al.**

No. 6837.

United States Court of Appeals Fourth Circuit.

Argued June 18, 1954.

Decided July 20, 1954.

Osmond K. Fraenkel, New York City (Arthur Garfield Hays, New York City, John G. Dawson, Kinston, N. C., Lucas, Rand & Rose, Wilson, N. C., and John B. McMullan, Elizabeth City, N. C., on brief), for appellant.

Ralph Moody and I. Beverly Lake, Asst. Attys. Gen., of North Carolina (Harry McMullan, Atty. Gen., of North Carolina, on brief), for appellees.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and TIMMERMAN, District Judge.

PARKER, Chief Judge.

This is an appeal from an order denying an interlocutory injunction. Plaintiff is the owner of a race track in Currituck County, North Carolina, at which it has been conducting dog races under a pari mutuel betting system authorized by chapter 541 of the Session Laws of North Carolina of 1949. This statute was declared violative of provisions of the North Carolina Constitution by the Supreme Court of the state and the pari mutuel betting thus carried on held to be a violation of the general anti-gambling statute of the state in the case of State v. Felton, 239 N.C. 575, 80 S.E.2d 625, decided March 17, 1954. At the same time the Supreme Court of North Carolina reversed a decision of the Superior Court of Currituck County which had dismissed an action instituted against the plaintiff here to enjoin gambling at this race track. State of North Carolina on the relation of State ex rel. Summrell v. Carolina-Virginia Racing Association, 239 N.C. 591, 80 S.E.2d 638.

Upon remand of this injunction case, the Superior Court of Currituck County on April 8, 1954 entered a judgment declaring the operation of plaintiff's dog track to be a nuisance in violation of the general anti-gambling statute and enjoining plaintiff from operating the track. Plaintiff has appealed from this judgment to the Supreme Court of North Carolina, where the appeal is now pending and where it will be heard in the late summer or early fall of this year. In the meantime, plaintiff claims that it will be greatly and irreparably damaged if not allowed to hold the summer dog races at its track and has instituted this action to enjoin the enforcement of the injunction of the state court and to restrain state law enforcement officers from enforcing the provisions of the state anti-gambling statute against operations conducted at its dog track in accordance with the provisions of the statute held unconstitutional by the Supreme Court of North Carolina. Relief is asked on the ground that this decision constitutes such a change in the decisions of that court as to impair the obligations of plaintiff's charter and to deprive it of property without due process of law.

We think it perfectly clear that the interlocutory injunction was properly denied and that plaintiff's action should be dismissed. The constitutionality of a state statute when tested by the state Constitution is, of course,

purely a matter of state law; and it is too well settled to justify discussion that the federal courts are bound by the decisions of the state Supreme Court on such matters. A.F. of L. v. Watson, 327 U.S. 582, 596, 66 S.Ct. 761, 90 L.Ed. 873; Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1016, 88 L.Ed. 1246; Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 71 L.Ed. 270; Gatewood v. North Carolina, 203 U.S. 531, 27 S.Ct. 167, 51 L.Ed. 305. We must accept, therefore, the holding of the North Carolina Supreme Court that the statute upon which plaintiff relies is invalid as violative of the Constitution of North Carolina; and plaintiff is manifestly not helped by the argument that it made investments and entered into contracts on the basis of a statute that had no validity.

We are not impressed by the argument that the decisions of which plaintiff complains are not in harmony with prior decisions of the court; but, even if this were true, it would make no difference. No one has a property right in a court decision; and persons engaging in conduct violative of the general criminal laws of the state in reliance upon a special statute have no ground of complaint when the statute is held invalid as violative of the state Constitution, even though the court may have changed its course of decision in so holding. The state may no more estop itself by court decision from exercising its police power than it may bargain away that power. As said by Chief Justice Taft in Tidal Oil Co. v. Flanagan, 263 U.S. 444, 450, 451, 44 S.Ct. 197, 198, 68 L.Ed. 382, " * * * the mere fact that the state court reversed a former decision to the prejudice of one party does not take away his property without due process of law", and "It has been settled by a long line of decisions, that the provision of section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against impairment by legislation and not by judgments of courts." See also Stone v. Mississippi, 101 U.S. 814, 25 L.Ed. 1079; Patterson v. Colorado, 205 U.S. 454, 461, 27 S.Ct. 556, 51 L.Ed. 879; O'Neil v. Northern Colorado Irrigation Co., 242 U.S. 20, 26, 37 S.Ct. 7, 61 L.Ed. 123; Dunbar v. City of New York, 251 U.S. 516, 519, 40 S.Ct. 250, 64 L.Ed. 384; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 680, 50 S.Ct. 451, 454, 74 L.Ed. 1107. The principle here applicable was thus stated by Mr. Justice Brandeis in the case last cited:

"It is true that the courts of a state have the supreme power to interpret and declare the written and unwritten laws of the state; that this court's power to review decisions of state courts is limited to their decisions on federal questions; and that the mere fact that a state court has rendered an erroneous decision on a question of state law, or has overruled principles or doctrines established by previous decisions on which a party relied, does not give rise to a claim under the Fourteenth Amendment or otherwise confer appellate jurisdiction on this court.

" * * * Undoubtedly, the state court had the power to construe the statute dealing with the state tax commission; and to re-examine and overrule the Laclede Case. Neither of these matters raises a fedaral question; neither is subject to our review."

And in a note to the opinion the learned justice observed:

"The process of trial and error, of change of decision in order to conform with changing ideas and conditions, is traditional with courts administering the common law. Since it is for the state courts to interpret and declare the law of the State, it is for them to correct their errors and declare what the law has been as well as what it is. State courts, like this Court, may ordinarily overrule their own decisions with-

out offending constitutional guaranties, even though parties may have acted to their prejudice on the faith of the earlier decisions."

And aside from the foregoing considerations, we think it perfectly clear that the court was without jurisdiction to grant the injunction prayed. In so far as plaintiff seeks to enjoin the enforcement of the anti-gambling statute of the state, which the state Supreme Court held applicable to its dog track, the principle applies that injunction will not issue to enjoin the enforcement of criminal statutes claimed to be unconstitutional in the absence of a clear showing of the invasion of a property right, and there is, of course, no property right to engage in gambling contrary to state law. Bradford v. Hurt, 5 Cir., 84 F.2d 722. In so far as plaintiff seeks to enjoin the enforcement of the injunction issued by the state court, the answer is that one court of equity will not enjoin the use of the injunctive power by another court of equity nor will a federal court use the injunctive power to review the action of a state court of coordinate jurisdiction. Directly in point is the decision in Ritholz v. North Carolina State Board, D.C., 18 F.Supp. 409, 413. in which there was an attempt to enjoin the enforcement of an injunction issued by a state court. In that case the court held that the granting of the injunction to stay state court proceedings was prohibited by 28 U.S.C.A. § 379 [Revision of 1948, 28 U.S.C.A. § 2283] and went on to say:

"And, irrespective of the statute, we think that the suit must be dismissed as an attempt to review by bill in equity in a federal court a decision of a state court. As pointed out above, the issue involved in both suits is the right of plaintiffs to do business under the method they were pursuing, and this issue was squarely determined against plaintiffs in the suit pending in the state court and injunction was issued accordingly. The rule is well settled that one court of equity will not enjoin proceedings in another of co-ordinate jurisdiction. Pomeroy's Equitable Remedies (2d Ed.) § 642; Central Trust Co. of New York v. Evans, 6 Cir., 73 F. 562; Furnald v. Glenn, 2 Cir., 64 F. 49. But, assuming that there would have been nothing objectionable in the maintenance of the suit in the federal court prior to the entry of the injunction order by the state court, it is clear that when that order was entered it was binding upon the parties (Kline v. Burke Construction Co., 260 U.S. 226, at page 230, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077) and not subject to review by independent suit entered in some other jurisdiction (Furnald v. Glenn, supra). The remedy of plaintiffs, if they are aggrieved by the action of the state court, is appeal to the state Supreme Court, the action of which in proper cases can be reviewed by the Supreme Court of the United States by writ of certiorari. After litigating the issue in the state court, however, they cannot remove the case to the federal district court, nor can they obtain review of an adverse decision by filing a bill in equity in that court. Baltimore & O. R. Co. v. Board of Public Works, D.C., 17 F.Supp. 170, 176. As was well said by Judge Wallace in Furnald v. Glenn, supra, 2 Cir., 64 F. 49, at page 54, 'No authority has been cited for the proposition that one court of equity will undertake to annul the interlocutory decree of another court of equity; and there is no support for it upon principle or in good sense. The party complaining of such a decree has a sufficient remedy by applying to the court which made it, and it would be most unseemly, and an intolerable interference with the orderly administration of justice, for another court to assume to interpose.' "

834

For the reasons stated the order denying the interlocutory injunction will be affirmed with directions to dismiss the bill for want of equity, the action which was taken in Bradford v. Hurt, supra.

Affirmed with directions.