Joseph Yuki **SOTOMURA** and Grace Fumiye Sotomura, Plaintiffs,

v.

**COUNTY OF HAWAII** et al., Defendants.

Civ. No. 75–0067.

United States District Court, D. Hawaii.

Sept. 19, 1975.

Clinton Ashford, Douglas MacDougal, Ashford & Wriston, Honolulu, Hawaii, for plaintiffs.

Ronald Y. Amemiya, Atty. Gen., Russell Fukumoto, Deputy Atty. Gen., Honolulu, Hawaii, Clifford H. F. Lum, Corp. Counsel, Katsuya Yamada, Deputy Corp. Counsel, County of Hawaii, Hilo, Hawaii, for County of Hawaii, Matayoshi,

Mayor of the County of Hawaii, Lum, Corp. Counsel of Hawaii.

### MEMORANDUM DECISION

WONG, District Judge.

*Statement of Facts*

On March 5, 1975, plaintiffs filed this action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and 28 U.S.C. § 2283, based on alleged violations of their Fifth, Seventh, and Fourteenth Amendment constitutional rights [1] stemming from the Hawaii Supreme Court's "re-location" of their property's seaward boundary in *County of Hawaii v. Sotomura*, 55 Haw. 176, 517 P.2d 57 (1973) (hereinafter referred to as the "Sotomura" decision). Named as defendants in this action are The County of Hawaii and its Mayor and Corporation Counsel (hereinafter "County defendants"), the Governor of Hawaii, the Attorney General, and the Chairman and Members of the State Board of Land and Natural Resources (hereinafter "State defendants").[2] Jurisdiction in this action is based upon 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

On April 16, 1975, State defendants filed a motion to dismiss. County defendants subsequently filed their motion to dismiss on June 23, 1975. After listening to argument by all counsel at the hearing on these motions, this court orally denied defendants' respective motions to dismiss. This decision enlarges upon that oral decision rendered by this court on August 1, 1975.

The background facts for this action are undisputed and are reported at 55 Haw. 176, 517 P.2d 57 (1973). The subsequent history of the *Sotomura* case is footnoted below.[3]

---

1. In their complaint, plaintiffs have alleged the following constitutional violations:

 (a) That the Hawaii Supreme Court's judgment deprived plaintiffs of their property without just compensation in violation of their Fifth and Fourteenth Amendment substantive due process rights. (Count I, Paragraph 9.)

 (b) That the Hawaii Supreme Court deprived plaintiffs of their property without affording them an opportunity for a hearing, argument, or the presentation of evidence in violation of their Fifth and Fourteenth Amendment procedural due process rights. (Count I, Paragraph 10.)

 (c) That the Hawaii Supreme Court adjudicated title to plaintiffs' property without affording plaintiffs the right to a jury trial in violation of their Seventh and Fourteenth Amendment rights. (Count I, Paragraph 11.)

 (d) That the Hawaii Supreme Court failed to give *res judicata* effect to the binding decree of the Land Court in violation of their Fifth and Fourteenth Amendment rights. (Count I, Paragraph 12.)

 (e) That the implementation of the Supreme Court's judgment by the named State and County defendants deprives or threatens to deprive plaintiffs of their Fifth and Fourteenth Amendment rights to just compensation and due process of law. (Count I, Paragraphs 13 to 17.)

 (f) That the judgments of the Circuit Court and the Supreme Court are void for lack of jurisdiction because the Land Court has exclusive original jurisdiction over all questions affecting title to registered land; these judgments, therefore, have deprived plaintiffs of their Fifth and Fourteenth Amendment rights. (Count II, Paragraphs 19 to 21.)

2. The individually named defendants are Herbert T. Matayoshi, Mayor; Clifford Lum, Corporation Counsel; George R. Ariyoshi, Governor; Ronald Y. Amemiya, Attorney General; Christopher Cobb, Acting Chairman and Member of the Board of Land and Natural Resources; and Shinichi Nakagawa, Larry E. Mehau, Manuel Moniz, Jr., Moses Kealoha, and Hisao Munechika, Members of the Board of Land and Natural Resources.

3. Following the December 11, 1973 decision of the Supreme Court, appellants filed a petition for rehearing on December 21, 1973. On December 28, 1973, the Supreme Court denied appellants' petition for rehearing and motion for stay of mandate. The final judgment was filed on January 7, 1974. Appellants then filed a motion for recall of mandate on January 23, 1974. This motion was denied on February 26, 1974. Appellants subsequently filed a petition for writ of certiorari to the United States Supreme Court which was denied on October 15, 1974, 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111.

*Legal Issues Raised*

In their respective motions to dismiss, defendants have raised the following arguments:[4]

1. That the State court proceedings which have been completed are res judicata and collateral attacks upon those proceedings should not be permitted in this subsequent federal action.

2. That this action is in substance an action against the State of Hawaii and the State has not waived its sovereign immunity in this case.

3. That there is no subject matter jurisdiction because there has been no showing that the State and County officers have acted "under color of state law," as is required for any action brought under Section 1983.

4. That any Section 1983 action brought against a state by its own citizens is barred under the Eleventh Amendment.

5. That "for reasons of comity" this court should decline to review the matters raised in plaintiffs' complaint by the doctrine of abstention since the law of real property is, under our Constitution, left to the individual states to develop and administer.

6. That the applicable statute of limitations for this Section 1983 action has lapsed.

7. That no substantial federal question has been raised.

*Res Judicata*

■ Defendants' cases—*See, e. g., Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814 (1969)—accurately state the principle of res judicata as being applicable where the parties in a prior suit have litigated or properly could have litigated the issues raised in a subsequent action. Defendants have broadly asserted that the Circuit Court's and Supreme Court's judgments in the *Sotomura* case are *res judicata* in this action. This court feels, however, that defendants have not properly addressed themselves to the key question of whether the constitutional issues raised in plaintiffs' complaint were litigated or could have been litigated in either the Circuit Court or the Supreme Court.

First, in taking plaintiffs' procedural due process claim under the Fifth and Fourteenth Amendments, this court recognizes that plaintiffs were well aware that the controlling issue in their appeal to the Hawaii Supreme Court was the applicability of the *Ashford* case.[5] Therefore, at first glance, it would appear that plaintiffs have had their day in court on the applicability of *Ashford*, at least as it specifically relates to the question of whether the debris line or the *limu* line should be deemed controlling. Moreover, if one views the Supreme Court's treatment of *Ashford* in *Sotomura* as merely redefining or elaborating upon what was meant in *Ashford*, then, certainly, the fact that plaintiffs were not given an opportunity to present argument and evidence against

4. At the August 1, 1975 hearing, this court granted the State defendants leave to join in the arguments raised by the County defendants which were also applicable to them. Likewise, County defendants were granted leave to join in the State defendants' arguments which were also applicable to them.

This court finds it unnecessary to dwell upon County defendants' arguments that they should be dismissed because there is no complete diversity among all the parties and because the County is not a person subject

to a Section 1983 action. These arguments are completely lacking in merit based upon (a) the record which indicates that there has been no allegation of diversity jurisdiction in this case, and (b) clarification by plaintiffs' counsel at the hearing that the County has been named as a defendant pursuant to 28 U.S.C. § 1331 and not 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

5. *In re Application of Ashford*, 50 Haw. 314, 440 P.2d 76 (1968).

fixing the seaward boundary at the vegetation line becomes less significant.

However, this court is of the opinion that the *Ashford* case should be limited to its facts. In *Ashford*, the Supreme Court was called upon to define and locate *ma ke kai*, a term which has been used to describe the seaward boundary of property which petitioners sought to register with the Land Court. After searching to determine what was the real property law in existence when the royal patents for petitioners' property were issued in 1866 by King Kamehameha V, the court found that *ma ke kai* is "along the upper reaches of the wash of waves, usually evidenced by the edge of vegetation or by the line of debris left by the wash of waves." 50 Haw. at 315, 440 P.2d at 77. *Ashford* did not deal with the question of whether these standards for determining *ma ke kai* could be applied *retroactively* to previously registered Land Court property. In the Land Court decree for plaintiffs' property, the seaward boundary is not described as along the high water mark but is specifically located by metes and bounds. 55 Haw. at 188, 517 P.2d 57. Furthermore, *Ashford* did not deal with the situation where there was both a debris line and a vegetation line, in addition to a *limu* line. Noticeably absent in the *Sotomura* opinion is any evidence of, or any specific reference to, the "tradition, custom, and usage in old Hawaii" for fixing the seaward boundary at the *limu* line, the debris line, or the vegetation line where all three lines were present on a subject property. The record also indicates that throughout the State court proceedings, neither the State nor the County ever contended that the vegetation line was controlling on the boundary question. Given all of these factors, this court believes plaintiffs have made a prima facie showing that the Hawaii Supreme Court's action in formulating its new "presumption of law" [6] regarding the vegetation line, without ever affording the parties an opportunity to contest this new finding of law by the presentation of argument and evidence upon rehearing, transgressed the due process clause of the Fourteenth Amendment. *Brinkerhoff-Faris Co. v. Hill*, 281 U.S. 673, 677–81, 50 S.Ct. 451, 74 L.Ed. 1107 (1930).

Next, turning to plaintiffs' substantive due process claim under the Fifth and Fourteenth Amendments, this court finds two related issues to be, first, whether the State court's failure to give *res judicata* effect to the previous Land Court decree violated plaintiffs' constitutional rights, and, second, whether the State court's retroactive application of the *Ashford* standards to previously registered Land Court property was a radical departure from established state law so as to constitute a taking of private property without just compensation. On these issues, defendants argue that no person has a "vested right" in a court decision, and that the mere fact that a state court reversed a former decision to the prejudice of a party does not take away his property without due process of law. *Carolina-Virginia Racing Assn. v. Cahoon*, 214 F.2d 830, 832 (4th Cir. 1954); *Cooper v. Comm. of Internal Revenue*, 197 F.2d 951, 953 (4th Cir. 1952); *Sunray Oil Co. v. Comm. of Internal Revenue*, 147 F.2d 962, 963 (10th Cir. 1945); *Baumann v. Smrha*, 145 F.Supp. 617 (D. Kansas 1956), *aff'd* 352 U.S. 863, 77 S. Ct. 96, 1 L.Ed.2d 73 (1956). This court

6. "We hold as a matter of law that where the wash of the waves is marked by both a debris line and a vegetation line lying further mauka; the *presumption* is that the upper reaches of the wash of the waves over the course of a year lies along the line marking the edge of vegetation growth. The upper reaches of the wash of the waves at high tide during one season of the year may be further mauka than the upper reaches of the wash of the waves at high tide during the other seasons. Thus while the debris line may change from day to day or from season to season, the vegetation line is a more permanent monument, its growth limited by the year's highest wash of the waves." (Emphasis added.) 55 Haw. at 182, 517 P. 2d at 62.

finds the cases relied upon in support of this argument to be inapposite in the case at bar. Plaintiffs' asserted property rights are not founded upon the former general decisional law of the State but upon the Land Court decree for plaintiffs' property. The Land Court's proceedings are in rem against the land and its decree operate "directly on the land" in vesting and establishing title thereto. Section 501-1, H.R.S. These decrees are "conclusive upon and against all persons, including the State." Section 501-71, H.R.S.[7] Under *Ashford*, property rights are determined by the law in existence at the time such rights are vested. *Id.* at 317, 440 P.2d 76. In this case, plaintiffs' property rights vested as of the date and time noted on plaintiffs' decree of registration. *See* Section 501-74, H.R.S.

The binding force of a Land Court decree was recognized by the Ninth Circuit in its *en banc* decision in *United States v. Fullard-Leo*, 156 F.2d 756 (9th Cir. 1946). In that case the United States filed a petition in this court to quiet title to and for a writ of possession in the Island of Palmyra. The appellees answered, and relying upon a 1912 Hawaii Land Court decree which registered title in their predecessor in interest, prayed for judgment "settling and quieting title to said Palmyra . . . in these respondents and determining and declaring that said decree of the Land Court of the Territory of Hawaii was and is a binding decree." 156 F.2d at 760. In affirming judgment for appellees, the court found that the Attorney General of the Territory had been cited in the original registration proceedings and had disclaimed any interest in the island. Because full authority with respect to the administration, management, and disposition of Hawaii's public lands had been committed to the Territory by Congress by the terms of Sections 91 and 73 of the Organic Act, 48 U.S.C. §§ 511, 663–77, the court held that the Land Court decree was conclusive upon the United States. In the court's view, "Good sense, as well as considerations having to do with the security of titles in Hawaii, dictate[d] this result." 156 F.2d at 759.

In *Sotomura*, the Supreme Court found that the Land Court decree was conclusive, absent any erosion.[8] Therefore, the real "taking" issue presented in this action is whether the relocation of a seaward boundary following physical erosion is to be determined by the "actual erosion" of the property, as measured by the same standards used to determine the original boundaries certified in the Land Court decree—here the *limu* line—or a "presumption" which, by its practical operation and effect, may take in more than the actual physical erosion of the property. Justice Marumoto, in his concurring and dissenting opinion in *Sotomura*, seemed to feel that where a seaward boundary has been changed by erosion, the burden of proving the actual erosion by physical evidence, and not by a mere presumption, should be on the State.[9]

---

7. Section 501-71, H.R.S., provides in pertinent part:

"Every decree of registration of absolute title shall bind the land, and quiet the title thereto, subject only to the exceptions stated in Section 501-82. It shall be conclusive upon and against all persons, including the State, whether mentioned by name in the application, notice, or citation, or included in the general description 'to all whom it may concern.' The decree shall not be opened by reason of the absence . . . of any person affected thereby, nor by any proceeding for reversing judgments or decrees . . . . ."

8. "We hold that registered ocean front property is subject to the same burdens and incidents as unregistered land, including erosion. HRS § 501-81. *Thus the determination of the land court that the seaward boundary of Lot 3 is to be located along high water mark remains conclusive; however, the precise location of the high water mark on the ground is subject to change and may always be altered by erosion.*" (Emphasis added.) 55 Haw. at 180, 517 P.2d at 61.

9. "I think that, from the res judicata nature of a land court decree as stated above, where the seaward boundary of the registered land is described in the decree, *the*

In the *Smrha* case cited by defendants, the court implicitly recognized that a departure from a past decision would constitute a deprivation of property without due process of law if the court's modification of state law did not recognize "valid existing vested rights." 145 F.Supp. at 624–25. As more fully discussed below,[10] it is well established that courts are not immune from the constitutional prohibitions against taking property without just compensation when their unpredictable changes of state law operate to produce such a result. *See, e. g., Hughes v. Washington,* 389 U.S. 290, 296, 88 S.Ct. 438, 19 L. Ed.2d 530 (1967) (Stewart, J., concurring); *Muhlker v. New York & Harlem R.R. Co.,* 197 U.S. 544, 569–71, 25 S.Ct. 522, 49 L.Ed. 872 (1905); *Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Here, this court has been called upon to determine, *inter alia,* whether the application of the *Ashford* standards to plaintiffs' Land Court property constituted an unpredictable or radical departure from established state law. On this question, the state court proceedings logically cannot be said to be *res judicata.*

Finally, with respect to the United States Supreme Court's denial of plaintiffs' petition for writ of certiorari, the law is well settled that such a denial carries no implication whatsoever of the Court's views on the merits of plaintiffs' case and thus forms no basis for a finding of *res judicata. Maryland v. Baltimore Radio Show, Inc.,* 338 U.S. 912, 919, 70 S.Ct. 252, 94 L.Ed. 562 (1950).

Based on all of the foregoing, this court concludes that the defense of *res judicata* is not applicable in the circumstances of this case.

## SOVEREIGN IMMUNITY AND THE ELEVENTH AMENDMENT

In order for the sovereign immunity defense and the bar of the Eleventh Amendment to apply, this action must be construed as one against the State of Hawaii. State defendants argue that they have been named only nominally as defendants and that this is in substance against the State of Hawaii, given an overall assessment of the State's interests in the case. However, in making this argument, defendants have completely ignored the line of cases emanating from the United States Supreme Court's landmark ruling in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See also Georgia R.R. & Banking Co. v. Redwine,* 342 U.S. 299, 304, 72 S.Ct. 321, 96 L.Ed. 335 (1952); *Williams v. Eaton,* 443 F.2d 422 (10th Cir. 1971). These cases, which hold that a suit in federal court against individuals for the purpose of preventing them as officers of the state from enforcing an unconstitutional act is not a suit against the state within the meaning of the Eleventh Amendment, are controlling in this case. These cases also indicate that the issue of whether a state has sovereign immunity depriving a federal court of jurisdiction is a question of federal law, and the state court decisions cited by defendants in sovereign immunity are inapplicable. *Georgia R.R. & Banking Co. v. Redwine, supra* 342 U.S. at 305 n. 17, 72 S.Ct. 321; *Ex parte Young, supra* 209 U.S. at 167, 28 S.Ct. 441.

The *Redwine* case well illustrates the operation of the *Ex parte Young* principle and its relevance to this case. Appellant Georgia R.R. & Banking Co. was incorporated in 1833 by a Special Act of the Georgia General Assembly that in-

---

boundary must be presumed to remain along the described line, until a subsequent change is established by proof of accretion or erosion, the burden of proof of accretion being on the landowner and *the burden of proof of*

erosion being on the State." (Emphasis added.) 55 Haw. at 188–89, 517 P.2d at 65.

10. *See* discussion on *No Substantial Federal Question.*

cluded a provision for exemption from taxation. In 1945, the Georgia Constitution was amended to provide that "All exemptions from taxation heretofore granted in corporate charters are declared to be henceforth null and void." Appellant then filed suit against appellee's predecessor as State Revenue Commissioner in a Georgia state court seeking injunctive and declaratory relief. Relief was denied without reaching the merits of appellant's claims when the Georgia Supreme Court held that the action, was, in effect, an unconsented suit against the state which could not be maintained in the state courts. *Musgrove v. Georgia R.R. & Banking Co.,* 204 Ga. 139, 49 S.E.2d 26 (1948). The United States Supreme Court dismissed the appeal from that judgment because it was based upon an inadequate nonfederal ground.

Appellant then filed an action in federal district court to enjoin appellee from assessing or collecting ad valorem taxes pursuant to the new Georgia constitutional amendment. Appellant alleged that appellee's "threatened" taxation was contrary to its legislative charter and would impair the obligation of contracts between appellant and the State of Georgia, contrary to Article I, Section 10, of the Federal Constitution. A three-judge court dismissed appellant's complaint for want of jurisdiction, holding that the State of Georgia had not submitted itself to the jurisdiction of the court and that the action against the appellee was in effect an unconsented suit against the state prohibited by the Eleventh Amendment.

In reversing the judgment of the three-judge court, the Court reaffirmed *Ex parte Young* in holding that a suit to restrain unconstitutional action threatened by an individual who is a state officer is not a suit against the state. At footnote 17, the Court stated that "[t]he fact that the Georgia Supreme Court has considered that appellee acts with

official immunity does not, of course, impart immunity from responsibility to the supreme federal authority." 342 U. S. at 305, 72 S.Ct. at 325.

In Count I, plaintiffs have alleged that the implementation of the Hawaii Supreme Court's judgment in *Sotomura* by defendants "deprives or threatens to deprive" plaintiffs of their property in violation of their Fifth and Fourteenth Amendment rights to due process of law.[11] To date, defendants have not affirmatively stated that they have not attempted nor do they ever intend to enforce the judgment in *Sotomura.* Based on the record and the principle of *Ex parte Young,* this court concludes that the defense of sovereign immunity and the bar of the Eleventh Amendment are not applicable in the case at bar.

## NO STATE ACTION

This court recognizes that all of the named individual defendants (with the exception of Hawaii County Corporation Counsel Clifford Lum, whose office initiated the condemnation proceedings) played no active role in the *Sotomura* State court proceedings. Defendants equate this lack of active involvement in those proceedings with no action on their part under the color of state law. Defendants also argue that plaintiffs have not shown any "misuse of power" under the color of state law in this case.

As a preliminary matter, there is no question that the action of the Hawaii Supreme Court in the *Sotomura* case could be construed as "state action" in the light of prior United States Supreme Court decisions. *See Hughes v. Washington, supra; Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972), the Court explained that:

The very purpose of § 1983 was to interpose the federal courts between the

11. Count I, Paragraphs 13 to 17.

States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial.

By seeking to enforce the *Sotomura* judgment, defendants would certainly be acting under the color of state law. Defendants have not disclaimed any responsibility or involvement in enforcing the *Sotomura* judgment, either now or in the future. Under the doctrine of *Ex parte Young*, actions may be filed against state officials to enjoin them from enforcing unconstitutional acts, such as the alleged unconstitutional judgment of the Hawaii Supreme Court in the *Sotomura* case. Therefore, this court finds that the no-state-action defense is not well-founded and must be rejected.

## ABSTENTION

Defendants' assertion that the law of real property is, under our Constitution, left to the individual states to develop and administer, while perhaps valid as a general proposition, forms no basis for a dismissal of this action based on abstention. As the Supreme Court found in *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 191–92, 79 S.Ct. 1060, 1064, 3 L.Ed.2d 1163 (1959), the mere "fact that a case concerns a State's power of eminent domain no more justifies abstention than the fact that it involves any other issues related to sovereignty. . . ." Given the facts of this case, this court believes even a stay of proceedings based on abstention—*See, e. g., Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)—does not appear well-founded. In this action, there is no issue of state law which requires further resolution by the state courts. The Hawaii Supreme Court has already made an unequivocal ruling on the relocation of plaintiffs' property; this very ruling is alleged to have violated plaintiffs' constitutional

rights. At present plaintiffs have no other remedies in the state court system. Even if plaintiffs' position on the "taking" issues is vindicated in future state court decisions, plaintiffs will have no basis for being compensated for the alleged taking of their property under the *Sotomura* decision and mandate of the Hawaii Supreme Court. Therefore, this court finds the application of the abstention doctrine to be improper in this case.

## STATUTE OF LIMITATIONS

Since the federal statutes provide no statute of limitations for Section 1983 actions, the federal courts have adopted the statute of limitations of the state where the action arose, and have used a "resemblance test" to determine which specific state statute of limitations should be applied. *Smith v. Cremins*, 308 F.2d 187 (9th Cir. 1962); *Williams v. Townsend*, 283 F.Supp. 580, 582–83 (C.D.Cal.1968). Accordingly, this court must identify and apply the limitation applicable to the most analogous state law claim, and absent any analogous state claim, this court must apply the state's general statute of limitations, if any. *Sims v. Order of United Commercial Travelers of America*, 343 F.Supp. 112 (D.Mass.1972). Where it appears that the state has more than one statute of limitations applicable to a case, this court must apply the statute which the state would enforce if an action seeking similar relief had been brought in state court. *Williams v. Townsend, supra* at 582. Although this court must accept the state's interpretation of its own statutes of limitations, this court must determine for itself the nature of the right conferred by the federal statute. *Smith v. Cremins, supra.*

Defendants argue that the one year limitation of Section 657–11, H.R.S., should be applied in this case. This statute reads in pertinent part:

Whenever any federal statute provides for an imposition of a civil penalty or liquidated damages or imposes a new liability or enlarges any existing lia-

bility and the statute does not specify the period within which suit to recover the penalty, liquidated damages, or any sum arising out of any new or enlarged liability may be brought, the suit, if brought in a state court, shall be commenced within one year from the date the cause of action arises or be thereafter barred.

The issue raised by this statute is whether plaintiffs' Section 1983 action "provides for an imposition of a civil penalty for liquidated damages or imposes a new liability or enlarges any existing liability." Plaintiffs contend that the statute is inapplicable because this action is one for equitable relief and not for civil damages.

After reviewing plaintiffs' complaint, this court concludes that plaintiffs' action for declaratory and injunctive relief does not fall within the purview of Section 657–11, H.R.S. The Declaratory Judgment Act, 28 U.S.C. § 2201, expressly provides that a declaratory judgment may be rendered "whether or not further relief is or could be sought," and the case law firmly establishes that the determination and assessment of damages are not the primary purposes of the declaratory judgment action. *Fireman's Fund Ins. Co. v. Hanley;* 140 F.Supp. 206 (W.D.Mich.1956), *aff'd* 252 F.2d 780 (6th Cir. 1958). Therefore, although the imposition of monetary damages may ultimately result from this court's declaration of the rights and other relations of the parties, it does not follow that plaintiffs' action

should be considered as one for civil damages. This court, moreover, believes that a recovery of "just compensation" for the taking of property for public use cannot be construed to be a civil penalty for liquidated damages; nor can it be construed as a "new" or "enlarged" liability since the government's duty to pay arises under the Constitution as a direct consequence of its affirmative act of taking property for public use, and not from its failure to honor any antecedent debt or obligation.

After reviewing the scant legislative history[12] of Section 657–11, H.R.S., this court is convinced that the statute's scope was intended to be limited to actions for the recovery of penalties and liquidated damages. Nowhere in the legislative history is there any indication that the statute was intended to cover personal actions seeking redress for the deprivation of civil rights. This court believes such actions would be covered by Section 657–12, H.R.S., which was enacted in the same year as Section 657–11, H.R.S. Section 657–12 was repealed, however, in 1972. To apply Section 657–11 now to civil rights actions would raise certain analytical problems. Because Section 657–11 focuses on the liability imposed rather than the nature of the right or claim established under the federal statutes, it provides no substantive basis for applying the "resemblance test." This court notes that the "nature" of the federal right asserted in civil rights actions will not always be the same. In some cases, the basis of

---

12. The legislative history is reported in the House and Senate Journals for 1945. *House Standing Comm. Report No. 392* states in part:

"The bill sets a one year limitation on any action to recover a penalty or liquidated damages imposed by federal statutes. There is no local statute of limitation covering actions to recover a penalty or liquidated damages. This bill is designed to cure that deficiency." *1945 House Journal* at 1246.

*Senate Comm. Report* 341 briefly explains: "The purpose of this bill is to enact a statute of limitations of one year for the

bringing of any suit in a territorial court under a federal statute providing for an imposition of a civil penalty, or liquidated damages, or creating a new liability, where the federal statute does not specify the period within which suit may be brought.

\* \* \* \* \*

"Your Committee believes that the enforcement of penalties and the like should have a limitation and that this is a meritorious statute of repose, and therefore recommends that it do pass." *1945 Senate Journal* at 939.

plaintiffs' recovery may be most closely related and founded in tort, as was the case in the *Williams v. Townsend* case. In such cases, the statute of limitations set forth in the state's tort claims action would be controlling under the "resemblance test." These considerations underscore the reasonableness of this court's view of the limited scope of Section 657–11. This court therefore finds that the one year limitation of Section 657–11 should not be applied to this Section 1983 action.

 Taking the substance of plaintiffs' complaint as a whole, this court believes that this action is most closely akin to an action for compensation under Section 501–212, H.R.S.,[13] based on plaintiffs' alleged deprivation of land after the original registration of the land with the Land Court. *See also* Section 501–166, H.R.S. This kind of contract claim against the state may be prosecuted in the state circuit courts within six years from the time when plaintiffs' cause of action accrued. Section 501–217, H.R.S. Therefore, this court finds that the applicable statute of limitations for this action has not lapsed.

## NO SUBSTANTIAL FEDERAL QUESTION

 In *Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Supreme Court held that al-though the substantiality doctrine as a statement of jurisdictional principles affecting the power of federal courts to adjudicate constitutional claims has been questioned,[14] and characterized as "more ancient than analytically sound,"[15] it remains the federal rule. A dismissal of this action for want of a substantial federal question would therefore constitute a jurisdictional dismissal rather than a dismissal on the merits for failure to state a claim upon which relief can be granted.[16]

The standards for determining whether the questions raised in a complaint are so unsubstantial as to warrant a dismissal have been described in various ways. In one of the principal decisions on the subject, *Ex parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933), the Court stated:

> The question may be plainly unsubstantial, either because it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." (Citations omitted.)

In other cases, the Court has equated "constitutional insubstantiality" with such concepts as "essentially fictitious,"[17] "wholly insubstantial,"[18] or "obviously frivolous."[19] The limiting

---

13. Section 501–212, H.R.S., provides in pertinent part:

"Any person who, without negligence on his part, sustains loss or damage, or is deprived of land or of any estate or interest therein, after the original registration of land under this chapter, by the registration of any other person as owner of such land, or of any estate or interest therein, through fraud, or in consequence of any error, omission, mistake, or misdescription in any certificate of title or in any entry of memorandum in the registration book, may prosecute a contract claim in the circuit court for the recovery of compensation for such loss or damage or for such land or estate, or interest therein; . . . ."

14. *Bell v. Hood*, 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *See Mishkin*, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157 (1953).

15. *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

16. *Id.* at 403 n. 3, 90 S.Ct. 1207; *Ex parte Poresky, supra*.

17. *Bailey v. Patterson*, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

18. *Id.*

19. *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482 (1910).

words "wholly" and "obviously" have been given cogent legal significance as they relate to the effect of prior decisions on the substantiality of constitutional claims.

As noted previously, this court finds plaintiffs' procedural due process claim to be far from being frivolous. *See Brinkerhoff-Faris Co. v. Hill, supra.* Furthermore, this court believes Justice Stewart's concurring opinion in *Hughes v. Washington, supra,* is conclusive on the issue of whether a serious federal constitutional issue has been raised in plaintiffs' substantive due process claim with respect to the application of the *Ashford* standards to previously registered Land Court property. As Justice Stewart explained:

> To the extent that the decision of the Supreme Court of Washington on that issue arguably conforms to reasonable expectations, we must of course accept it as conclusive. But to the extent that it constitutes a sudden change in state law, unpredictable in terms of the relevant precedents, no such deference would be appropriate. For a State cannot be permitted to defeat the constitutional prohibition against taking property without due process of law by the simple device of asserting retroactively that the property it has taken never existed at all. Whether the decision here worked an unpredictable change in state law thus inevitably presents a federal question for the determination of this Court. *See Demorest v. City Bank Co.,* 321 U.S. 36, 42–43, 64 S.Ct. 384, 388–389, 88 L.Ed. 526. Cf. *Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685. The Washington court insisted that its decision was "not startling." 67 Wash.2d 799, 814, 410 P.2d 20, 28. What is at issue here is the accuracy of that characterization.

See also *Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 331, 94 S.Ct. 517, 38 L. Ed.2d 526 (1973); *Muhlker v. New York & Harlem R.R. Co.,* 197 U.S. 544,

569–71, 25 S.Ct. 522, 49 L.Ed. 872 (1905); *Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897).

State and County defendants' respective Motions to Dismiss are hereby denied.